[No. 919.   August 28, 1902.]

# JOHN W. GILL, Appellant, v. W. C. WALLIS et al., Appellees.

## SYLLABUS.

1.   On June 8, 1901, the Rio Grande, Mexico and Pacific Railroad Company conveyed to one Thomas Boles, a tract of forty acres of land in the town of Deming, New Mexico, in exchange for twenty acres of townsite lands, in the disposal of which, under the townsite laws, Boles was agent for the settlers, in which conveyance the following trust clause was inserted:   "In trust, however to so much of the above-described land and premises as is occupied at the date of the execution and delivery of this deed, by persons having the right of possession thereto on said date to the extent of two lots, of the ordinary size in said town of Deming, and no more, and subject to the payment by said persons, so entitled to the possession of their just share of the expenses that have been incurred in procuring the title to the lands included within the said premises so patented to said Carrol Dobbins, as aforesaid."   The settlers and the railroad company were involved in litigation for this land, and in 1892 the appellant Gill entered the railroad close and erected a two-wire fence around part of the lands, but did not reside thereon or make other improvements. In 1895, when the fence of appellant had fallen into decay and in anticipation of the land becoming public lands, as a result of pending litigation, A. Wallis, W. C. Wallis, John Tyndall and Frank Proctor entered upon the land in controversy, erected houses and other permanent improvements, and were actually residing upon the lands when the conveyance to Boles was made.   Appellees made application for title for two lots each upon which they were residing and offered to pay their proportion of the expenses, under the trust clause of this conveyance and Boles' notice calling upon claimants to make application.   Gill also made application for the entire block 72 upon which the defendants were residing.   Boles refused to execute deeds to the appellees and conveyed the entire block 72 to Gill, who brought suit to eject the appellees.   *Held*, that the trust clause in the conveyance to Boles operated in favor of the appellees actually occupying the lands at the time the conveyance to Boles was made, June 8, 1896, to the extent of two lots each in block 72, and that Boles held such lots impressed with such trust; that Gill received and held such two lots each in trust for the respective appellees, and that a decree directing said Gill to convey to each of the appellees the lands they were occupying

to the extent of two lots each, upon payment to him of their respective shares of the expenses assessed to them by said Boles for obtaining title to such lands, was a proper decree.

2. That under the facts proven in this case, the lands conveyed by the railroad company to Boles, in so far as the same were occupied at the date of the deed, were to be disposed of in practicable conformity with the laws of the United States and of the Territory of New Mexico, relating to townsites.

Appeal from the district court of Luna county, before FRANK W. PARKER, Associate Justice. Affirmed.

CATRON & GORTNER for appellant.

"Occupation" implies that a person is in the actual bona fide possession of a lot as a resident.

> Hussy v. Smith, 1 Utah 129; 17 Ency. L., p. 28.

"Right of possession" is also a condition of the trust. This means more than occupation. Right is that which one person ought to have or receive from another, it being withheld from him, or not in his possession.

> Bouvier's Law Dictionary; Black's Law Dictionary.

The right of possession may reside in one man, while the other has the actual possession, being the right to enter and turn out such actual occupant.

> Ammidown v. Granite Bank, 8 Allen (Mass.) 290; 1 Blackstone Comm., 138; Toledo Bank v. Bond, 10 O. St. 662; Brush v. Carter, 3 Vroom (N. J.) 562; Jones v. Van Zandt (C. C.), 603; Van Ness v. Washington, 4 Pet. 284-5, 7 L. Ed. 860.

S. M. ASHENFELTER and EUGENE A. FISKE for appellees.

The question between rival claimants is as to the rightfulness of their occupancy as between themselves, without reference to the length of time of such occupancy.

Pratt v. Young, 1 Utah 347; Cain v. Young, 1 Utah 261; Lechler v. Chapin, 12 Nevada 65.

Where trustees of townsites have conveyed to others than those entitled, it has been held that such grantees hold as trustees for the proper grantees.

Clayton v. Spencer, 2 Colorado 378; Silver v. Ladd, 7 Wallace 219.

APPELLANT'S REPLY BRIEF.

The original wrongdoer or trespasser having initiated his occupation in wrong, never comes lawfully into possession (except under the statute of limitations barring a recovery against him).

English v. Register, 7 Ga. 391; Marr v. Gillman, 1 Cold. 97; Calvin v. Rep. Land Asso., 36 N. W. 363.

Right of possession of real property is much different from "occupation" where that occupation is initiated by a simple seizure.

2 Bl. Comm. 197-8-9; 1 Barbour on Rights of Persons and Property, p. 549 et seq.; Willard on Real Estate, pt. 3, ch. 1, p. 312 et seq.; 3 Bingham on Real Property, p. 59 et seq.; Probst v. Presbyterian Church, 129 U. S. 182; Ewing v. Burnet, 11 Pet. 41, 52; Harvey v. Tyler, 2 Wall. 328; Maxwell L. G. Co. v. Dawson, 151 U. S. 587.

The law deems every man to be in legal seizin and possession of land to which he has a perfect and complete title; this seizin and possession is co-extensive with his right and continues until he is ousted thereof by an actual adverse possession.

Green v. Liter, 8 Cranch 229; Barr v. Gratz, 4 Wheat. 213; Society v. Pawlet, 4 Pet. 480, 405-6; Clark v. Courtney, 5 Pet. 354.

To depart from this rule would be to overthrow established principles.

U. S. v. Arredondo, 6 Pet. 743.

STATEMENT OF THE CASE.

This action involves a portion of block 72 of Boles' Addition to the town of Deming, in Luna county, New Mexico. The testimony was taken before a referee, whose report, including numerous findings of fact and conclusions of law, was, by the court, approved and confirmed in all respects, and a decree in favor of the defendants awarding them affirmative relief upon the answer and cross-complaint filed by them, was rendered in the court below, from which an appeal was taken to this court. The facts developed on the hearing, so far as it is deemed necessary to state them, are, that on the twentieth day of August, A. D. 1885, a patent was issued by the United States in favor of Carrol Dobbins for forty acres of land at that time situated in the county of Grant, now in the county of Luna, New Mexico, including the premises in controversy in this action, block 72 of Boles' Addition to the town of Deming.

In the same year, Dobbins and wife conveyed said forty acres of land to the Rio Grande, Mexico, and Pacific Railroad Company, in whom the title thereto remained until the eighth day of June, 1896, upon which date the railroad company conveyed (a portion of) said forty acres, which included block 72, to one Thomas Boles, a resident of the State of Arkansas, but charged with a trust in the following language:

"In trust, however, to so much of the above-described land and premises as is occupied at the date of the execution and delivery of this deed, by persons having the right of possession thereto, on said date to the extent of two lots of ordinary size in said town of Deming, and no more, and subject to the payment by said persons so entitled to the possession of their just share of the expenses that have been incurred in procuring the title to the lands included within the said premises so patented to said Carrol Dobbins as aforesaid."

In the year 1892, the appellant, John W. Gill, en-

tered upon and fenced a portion of Carroll Dobbin's forty acres, the said fence including block 72. This fence consisting of two strands of wire stretched upon two by fours thirty-two feet apart. Thereafter this fence went into decay; but a small portion thereof remained erected during and after the year 1894. Said Gill exercised no further acts of domain over said piece of ground so fenced except upon two several occasions; in 1893, and 1894; he leased it to circuses for the sum of five dollars in 1893, and for eleven tickets at one dollar each in 1894. In the month of May, 1895, the defendant A. Wallis, entered upon and fenced with a four-wire fence all of said block 72; he erected a tent and commenced the erection of an adobe house upon the portion of said block, which, since the survey thereof, has been known as lots eleven and twelve. This house was completed within a short time thereafter, and defendant, A. Wallis, resided continuously therein thereafter up to and after June 8, 1896, and during all of this time he was in the actual occupancy and possession of said two lots. While Wallis was engaged in the erection of the house he also dug a well upon said two lots. At the time Wallis entered, the fence, which had been erected by the appellant Gill, was down, and for some time previous appellant Gill had failed to maintain this fence. In the fall of 1895, the defendant John Tyndall, entered upon a portion of said block, which, since the survey thereof, has been known as lots five and six, and built a three-room adobe house and occupied the same and was in actual possession and occupation of said lots up to and after the eighth day of June, 1896. The defendant, Frank Proctor, in the fall of 1895, entered upon and took possession of a portion of said block 72, which, since the survey has been known as lots nine and ten, and began the erection of a house thereon, which was completed during the following winter, and thereafter Proctor was in actual occupation and possession of said lots until and after the eighth day of June, 1896. The defendant W. C. Wallis, in the fall of

1895, entered upon a portion of the same block, which, since the survey, has been known as lots one and two, and commenced the erection of a house thereon and had adobe and rock hauled upon said premises, and thereafter, was in continuous occupation and possession of said land until and after the eighth day of June, 1896. That Boles as such trustee, caused the premises conveyed to him by the railroad company to be surveyed and platted into blocks, lots, avenues, streets and alleys, and a map thereof filed in the office of the probate clerk of Grant county, July 13, 1896. That Boles by a deed dated the sixth day of August, 1896, reciting the provisions of the trust aforesaid, conveyed to John W. Gill lot one in block 72, and Boles and wife on the sixth day of December, 1896, conveyed by quitclaim deed to John W. Gill lots two, three and four of block 72, and in a similar quitclaim deed dated December 29, 1896, conveyed to John W. Gill lots five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, twenty, twenty-one, twenty-two, twenty-three and twenty-four in block 72. That prior to the conveyance of Boles to said Gill, the defendants above-named each made application to said Boles, as trustee, for conveyances to them of the land of which they were in occupation and possession, on the eighth day of June, 1896, and Boles stated to each his proportion of the expenses of obtaining title. Thereafter each of the defendants made tender of the amount so assessed to him to said Boles, as trustee, but Boles refused to convey, and later conveyed to John W. Gill. That Gill prior to the conveyance to him by Boles, had notice of the terms of said contract, and also had notice of the rights of the defendants in the lots occupied severally by them in block 72. Upon these and certain other facts the court below found that appellant Gill under the conveyance to him by Boles took the lands in the possession of the defendants charged with the trust in favor of the defendants according to their respective rights and interests under the trust clause of

the conveyance to him, and that the defendants were entitled to the execution of the trust and to conveyances from Gill for the lots respectively claimed by them and for title to which application had been made and decree was entered by which Gill was commanded at his own expense to forthwith convey to each of the said defendants the lots occupied by them at the time of the conveyance from Boles to Gill upon payment to him of their proportion of the expense of obtaining the title to the land.

### OPINION OF THE COURT.

McFIE, J.—The facts having been found and settled in the court below, the matter for determination by this court is wholly one of law. In the brief of appellant's counsel we find the following statement and admission: "If this be correct reasoning, then it is sufficient to call the court's attention to the fact that defendants in this action have simply proven, at best, that they are in 'actual bona fide possession of the lots as residents.' " The effect of this is an admission, that the appellees have established the fact, that they were in actual bona fide possession of the lots in question, as residents, at the time the Boles deed was executed, June 8, 1896. This admission sharply defines the issue to be whether the defendants who were in actual and bona fide possession of the lots they respectively claimed, and had applied for title thereto, as residents, are within the trust clause of the deed from the railroad company to Boles. Each of the parties have, as it were, erected a legal observatory from which to observe the scope of the inquiry; the plaintiff contending that as the Carrol Dobbins forty-acre tract was not a part of the entry of the Deming townsite, no reference can be made to the transactions which led up to the conveyance by the railroad company to Boles even for the purpose of ascertaining the intention of the parties in inserting the trust clause in the deed to Boles;

while on the other hand the defendants insist that this trust clause must be interpreted in the light of the condition and circumstances which caused the parties to that conveyance to deem it necessary to insert such a clause.

An examination of the facts proven on the hearing seems to justify the position of the defendants as bearing upon the thirteenth finding of fact which is as follows:

"Plaintiff John W. Gill and said Thomas Boles, one B. F. Rice, and J. W. Foster, had an arrangement before conveyance to Boles as aforesaid, by which they were to divide the portion of land so deeded to Boles as aforesaid after the citizens received the lots to which they were entitled."

This agreement has a material bearing upon the issue, when the facts developed in evidence are understood. The evidence shows that in 1885, or prior thereto, the railroad company erected a substantial fence around a large quantity of land, part of which was the Carrol-Dobbins and the remainder public land. This inclosure was called West Park, and was improved liberally by the company. There was considerable dissatisfaction which resulted in an attempt by certain citizens to have the United States deprive the company of these West Park lands. In 1892 and in anticipation of the railroad company losing the lands, two of the parties referred to in finding 13, John W. Gill and J. W. Foster, entered the railroad inclosure *in the nighttime* and Gill erected the two-wire fence referred to in the findings of fact. This entry was upon the Carroll Dobbins forty, and while the company had a custodian in charge. Gill did not reside on the property nor improve it otherwise than by this fence, but is the possession which it is contended was invaded by the defendants. A townsite entry was made of two hundred and eighty acres of public lands surrounding the Carrol-Dobbins forty on three sides, and including the other West Park lands, after a contest with the railroad company. Gill and Foster were inter-

ested in this contest, and Boles represented the settlers, who had also entered upon the railroad lands, and others. The entry was made by the probate judge of Grant county, as is provided by the townsite laws of the United States, and W. C. Wallis paid the money necessary to pay for the entry some three hundred and fifty or four hundred dollars. This entry was made under the townsite laws of the United States, section 2387, Revised Statutes of the United States, which provides that:

"Whenever any portion of the public lands have been or may be settled upon and occupied as a townsite, not subject to entry under the agricultural pre-emption laws, it is lawful, in case such town be incorporated, for the corporate authorities thereof, and, if not incorporated, for the judge of the county court for the county in which such town is situated, to enter at the proper land office, and at the minimum price, the land so settled and occupied in trust for the several use and benefit of the occupants thereof, according to their respective interests; the execution of which trust, as to the disposal of the lots in such town, and the proceeds of the sales thereof, to be conducted under such regulations as may be prescribed by the legislative authority of the State or Territory in which the same may be situated."

It will be observed that under the acts of Congress above referred to, the execution of the trust is for the use and benefit of the occupants, under the laws of the State or Territory in which such townsite shall be located. The Legislature of this Territory has enacted laws governing the execution of such trusts, and sections 3979 and 3981 have reference to this subject and are as follows:

"Sec. 3979. And such corporate authorities or probate judge holding the title to such lands in trust, as declared in the said act of Congress, his or their successors, shall, by a good and sufficient deed of conveyance, grant and convey the title to each and every block, lot,

share or parcel of the same to the person or persons who shall have possession, or be entitled to the possession or occupancy thereof, according to his, her or their several and respective rights or interest in the same, as they existed in law or equity at the time of the entry of such lands, or to his, her or their heirs and assigns. Every deed to be made by such corporate authorities, or by such probate judge, pursuant to the provisions of this act, shall be so executed and acknowledged as to admit the same to be recorded."

"Sec. 3981.   Each and every person or association or company of persons claiming to be an occupant or occupants, or to have possession or to be entitled to the occupancy or possession of such lands, or to any lot, block, share, or parcel thereof, shall, within sixty days after the first publication of such notice, in person, or by his, her, or their, duly authorized agent, or attorney, sign a statement in writing containing an accurate description of the particular parcel or parts of lands, in which he, she, or they, claim to have an interest, and the specific right, interest, or estate therein which he, she, or they, claim to be entitled to, receive and deliver the same to, or into, the office of such corporate authorities, or probate judge, and all persons failing to sign and deliver such statement within the time specified in this section shall be forever barred the right of claiming or recovering such lands, or any interest or estate therein, or any part, parcel or share thereof, in any court of law or equity.   In case any lots in such town remain unclaimed and unconveyed at the end of said sixty days, all such lots shall revert to and become the property of such town."

There are other sections which relate to this subject requiring the surveying, platting, and recording of the plats of such towns or cities into blocks, lots, streets, alleys, etc., and providing that suits may be brought to determine conflicting claims; that the same shall be conducted as chancery actions, etc., but it is not deemed

necessary to further refer to them for the purpose of this inquiry. Manifestly, therefore, the two hundred and eighty acres adjoining the Carrol-Dobbins forty were to be disposed of under the provisions of the townsite laws above referred to, and the act of Congress required them to be disposed of "for the use and benefit of the *occupants.*" It is admitted that the townsite entry did not embrace the Carrol-Dobbins forty for the United States has parted with its title to that tract by its patent to Dobbins, but as settlers were taking possession and erecting houses and other improvements upon portions of the Dobbins forty, and as litigation was proceeding which the evidence shows was likely to result adversely to the railroad company, in 1896 an exchange was agreed upon between the company and Boles who was agent for the settlers of the townsite, by which the company gave the Carrol-Dobbins forty for twenty acres of the townsite lands. That Boles was not to become the absolute owner of the Carrol-Dobbins forty is made plain by the trust clause of the conveyance to him and his acceptance of the trust imposed. The questions naturally suggested here are, why was the clause inserted at all, and whom was it designed to protect?. The language of the clause answers: "In trust, however, to so much of the above premises as is *occupied at the date* of the execution and delivery of this deed, by persons having the right of possession thereto on said date." This conveyance was dated June 8, 1896, and as all the defendants went upon the portions of the land claimed by them during 1895. A. Wallis as early as May, and others later—had erected residences thereon and were actually residing in them continuously, with the exception of W. C. Wallis, whom, by the finding of fact No. 7, had in 1895, "commenced the erection of a house thereon, and had adobes and rock hauled upon said premises, and thereafter was in continuous occupation and possession of said lots until and after the eighth day of June, 1896."

While counsel for appellant admit in their able

brief, that "it is apparent that to overcome the right of an occupant, the person having the right of possession must have a better title than a mere occupant," they insist that occupancy is not sufficient under what they urge to be a modifying clause "by persons having the right of possession thereto on said date." It is difficult to understand how this would benefit the plaintiff who does not claim the benefit of the trust clause except to the extent of one lot, and takes a quitclaim deed to the remainder of block 72, some twenty or more lots, without any regard to the trust clause of Boles' deed and the occupancy and possession of the defendants, of which the court below found he had actual notice. Although Mr. Gill accepted a deed under the trust clause it is evident that he denies the limitation to two lots therein contained, demanding and obtaining the entire block. Mr. Gill was not an actual occupant of any part of block 72 at the date of the execution and delivery of Boles' deed, nor does he insist that he was. Therefore those who drafted the trust clause did not intend to protect him in that part of the clause wherein it applies to such parts of the "premises as is occupied." Occupation "implies that a person is in actual bona fide possession of a lot as a resident. One who has never had actual possession can not be an occupant." Hussy v. Smith, 1 Utah 129. "An occupier is one who is in the use and enjoyment of a thing. . . . Occupancy is said to arise out of actual possession and manurance of the land; actual control of corporeal property." 17 Ency. Law, page 28. The defendants on the other hand would seem to be clearly within the clause as actual occupants at the date of the deed, and it is most reasonable to believe that the clause had direct reference to them. It has been repeatedly held that an occupant at the time a townsite entry is made is prima facie entitled to a deed from the townsite. Pratt v. Young, 1 Utah 347; Cain v. Young, 1 Utah 361; Lechler v. Chapin, 12 Nev. 65.

We are at a loss to find wherein Mr. Gill has a

superior right of possession. Both the plaintiff and defendants were mere squatters in the eyes of the law so long as the railroad company held the title, and the company did not part with the title until June 8, 1896. The record shows that Gill was the first person to enter the railroad close, and this was in 1892, or four years before the railroad company conveyed. The record also shows that the railroad company served the following notice upon Mr. Gill:

"Deming, August 1, 1892.
"Territory of New Mexico, County of Grant.
"To John W. Gill:.

"You are hereby notified to immediately vacate the following described land, situate in the town of Deming, county of Grant, and Territory of New Mexico, to-wit: Lying west of Gold avenue, north of Pine street, east of land unknown and south of Southern Pacific Company right-of-way and upon which you are engaged in the erection of a temporary building.

"Also to remove all material, fences and other obstructions that you may have placed upon said land known as the 'Park Tract' and claimed by the Atchison, Topeka and Santa Fe Railroad Company, which is now wrongfully occupied by you.

"W. S. PRATT,
"Agent, Atchison, Topeka & Santa Fe Railroad,
"Deming, New Mexico.".

Mr. Gill entered and put up a two-wire fence, but he did not remain on the land or make other improvements. Whether he was influenced by the above notice does not appear, but the court below found as a fact that this fence was in decay in 1895, when the defendants entered upon the land. It is clear that the railroad company did not give Mr. Gill any superior right of possession, as counsel for appellant suggest; such action might have necessitated this protection clause. It is also suggested by appellant's counsel that the possession

of an occupant, such as the defendants were, must have continued for ten years, the period of the statutory limitation, before it amounted to a right of possession and that the trust clause was inserted to protect such occupants. As to this contention it is sufficient to say, that it would seem entirely unnecessary to insert such a clause to protect those whose right of possession, under such circumstances, the law itself protected fully, and again it would not seem reasonable that the railroad company thus intended, for so far as the records show the earliest intrusion upon its possession of the Dobbins forty was by Mr. Gill in 1892, or about four years prior to the conveyance containing the trust clause.

Upon the trial Mr. Gill testified that he paid for one-fourth of the Carrol Dobbins tract, but upon cross-examination admitted that it was paid for by the twenty acres of the townsite land of which he claimed a one-fourth interest. This then, forms the basis of the division of the Carrol Dobbins forty referred to in the eleventh finding of fact. If, however, the railroad company were informed that Boles, Gill, Foster and Rice claimed the ownership of the tract and intended to divide it between them, it is evident that the railroad company recognized the rights of the settlers actually occupying the lands at the time the deed was made as superior to the claims of Gill and his associates to the extent of two lots each. Interpreting this trust clause in the light of the facts and circumstances last referred to, it seems clear that the intention of the railroad company in inserting the trust clause in this deed was for the specific purpose of protecting other persons whom they knew to be actually residing upon the land, and who had erected houses and other improvements there, and for the purpose of recognizing the superior rights of such settlers over rights claimed by persons such as the plaintiff and his associates who had not at any time resided upon the lands being conveyed. The language of the first part of the trust clause wherein it places in trust so much of

the land and premises as is occupied at the date of the execution and delivery of the deed, is very significant in the light of the above facts, and in our judgment can only mean one thing, and that is the protection of the defendants who were actually occupying the lands as settlers, and that the remaining part as to the right of possession is practically synonymous with the first provisions of the clause, and that in no event could it refer to persons who did not occupy any part of those lands, at the time the conveyance was made. The intention of the railroad company being to place it in the power of Boles to dispose of or divide between himself and associates, Gill, Foster and Rice, such portion of the lands as remained after each of the actual occupants thereon had received the two lots which Boles was directed to hold in trust for them and give conveyance to them upon their complying with the conditions of the trust by paying to Boles their proportion of the expenses of acquiring and conveying the land, an amount which the record shows, was agreed upon between the defendants and Boles. It is often the case that parties to a contract, deed or other written instrument furnish the evidence of a proper interpretation of the instrument to which they are parties by their own declarations, or actions in carrying out the provisions of the instrument. Such seems to be the case here. It is not difficult to see upon examination of the declarations and actions of the parties to this trust, that while all parties were aware that the Carrol Dobbins forty was not and could not be embraced within the townsite entry, that it was desirable that the disposition of this tract of land when it passed out of the ownership of the railroad company, should be disposed of as near as might be according to the laws governing townsite entries; at least, so far as it related to actual occupants of the land. The probate judge who made the entry as trustee for the settlers upon the townsite land was required to dispose of these lands according to the townsite laws of the United States and of

the Territory to which we have above referred, and under these laws the actual occupant had rights which could not be taken away from him and which secured to him a certain portion of the townsite upon his compliance with the trust conditions under the townsite law. The railroad company by inserting this trust clause in the deed thereby constituted Mr. Boles a trustee for the same purpose, so far as the actual settler was concerned, as was the probate judge under the townsite law. The remainder of the land to which those in possession were not entitled, of course could be conveyed absolutely by Mr. Boles, because it remained untrammeled with the trust clause, as if the lands came to the trustee from private ownership.

Referring then, to the evidence furnished by the declarations and actions of the parties, it may be pointed out here that the townsite laws required the trustee to have the townsite surveyed and platted into lots, blocks, streets, alleys, etc., and we find that Mr. Boles proceeded to have this tract of land surveyed in a similar way. The townsite laws above referred to provided that the trustee shall give notice to the occupants of the lands calling them to make the necessary claim and proof showing their rights to a portion of the townsite, and section 3981, Compiled Laws 1897, provides that within sixty days after the first publication of such notice that the person by his or her duly authorized agent or attorney shall sign a statement containing a description of the portion of the land claimed. We find what Mr. Boles published a notice calling upon all those claiming the right of possession in the lands embraced in the Carrol Dobbins forty to make their claim, almost identical as required by the statute in townsite cases and giving sixty days in which to do so. It is further found that a large number of printed blanks were prepared doubtless with the approval of Mr. Boles, the trustee, as the evidence shows, and after Mr. Boles had received a large supply of these printed blanks, other parties obtained the same

blanks, and they were the same kind of blanks used by others in making application for lots in these lands as well as the townsite lands, the form of which, as shown by the application of Albert Wallis, applicant, is as follows:

### "APPLICATION.

"Deming, New Mexico, July 7, 1896.

"Thomas Boles, Trustee, etc.

"Deming, New Mexico.

"Sir: I hereby make application for a deed to the following lot of land, to-wit: Being situate in the southwest quarter of southeast quarter of section, township 23 south, range 9 west, in the town of Deming, Grant county, New Mexico and designated on the plat of Boles' survey of said town, to lots 11 and 12 in block 72.

"I became entitled to the possession of said lot on or about the twentieth day of April, 1895, in the following manner, to-wit, under the townsite laws of the United States.

"There are the following improvements on said lots, made by the following named persons on the date hereinafter given: One adobe house, sixteen by forty-one feet, built by me.

"That all said improvements cost about $450 and are now worth $450. I am ready and willing to pay my just share of the expenses incurred in procuring title to the land included within said premises.

"ALBERT WALLIS, Applicant."

It is also in testimony that Mr. Boles did not object to the form of these applications. It will be observed that in this form of application, the settler was required to state that he became entitled to the possession of said lot or lots on or about a certain date in the following manner, to-wit, under the townsite laws of the United States, and an offer was made by the applicant to pay his proportion of the expense of acquiring the lands.

The proceedings are all practically identical with the proceedings which the probate judge of Grant county would require as to lots in the townsite, and, therefore, they are in substantial compliance with the townsite laws of the United States. The above provisions being requirements, or meeting with the approval of Mr. Boles, the trustee, they serve to show his own interpretation of the trust clause in the conveyance to him, and further show that it was his understanding that the lands embraced in the Carrol Dobbins forty were to be disposed of so far as settlers residing thereon were concerned substantially as other townsite lands were disposed of. It is not difficult to see that the railroad company, the grantor in the Boles conveyance intended a similar method of disposing of the lands conveyed, so far as they are related to the occupants in possession at the time the deed was executed. Probably sufficient has been said to indicate this in a former part of this opinion, but it might be added that in addition to constituting Mr. Boles trustee for those occupying the lands, there is a limitation in the number of lots each settler is to receive, which is in substantial compliance with the following provision of section 2382 of the townsite laws of the United States, which is as follows:

"But any actual settler upon any one lot as above provided, and upon any additional lot in which he may have substantial improvements, shall be entitled to prove up and purchase the same as a pre-emption at such minimum at any time before the day fixed for the public sale."

It appears, therefore, that both the grantor and the grantee in the conveyance of the Carrol Dobbins forty united in the intention of disposing of the lands embraced in that tract in a similar manner to those embraced in the townsite of which it was to be practically a part and adjoining that uniform system of disposing of these lands might prevail throughout the entire addition to the town of Deming, and also that actual settlers

Gill v. Wallis.

upon the Carrol Dobbins forty should have the same protection as actual settlers had under the laws of the United States relating to the establishment of townsites, and the acts of the parties above referred to so thoroughly indicate this purpose as to amount to a construction of the trust clause in the deed to this effect by the parties themselves.

From what has been said, it is apparent that the decree entered in this case by the court below was correct. The court below entered a decree declaring John W. Gill to have received title to two lots each occupied by the defendants, in trust for their use and benefit, and required him to convey to each of the said defendants the two lots respectively claimed and occupied by them upon payment by them to him of the proportion of the expense of obtaining the lands which they were required to pay, thus declaring that the trust clause of this deed was for the protection of the defendants in their right to obtain title to the extent of two lots each in block 72, by reason of their being actual occupants of the land at the time the deed was executed and delivered.

Counsel for appellant and appellee waiving all technical errors suggested by the assignment of error, have submitted the case to this court upon the legal interpretation of the trust clause in the deed, and whether or not it embraced within its terms the defendants in this case. This court being of the opinion that the court below properly construed the trust clause of said conveyance, and entered a proper decree in accordance with the terms thereof, the decree of the court below is affirmed with costs.

Mills, C. J., Baker and McMillan, JJ., concur.

Justice Parker having tried the case below, did not participate in the hearing.