[Civ. No. 12956.   First Dist., Div. Two.   Dec. 27, 1945.]

JAMES K. SLOAN et al., Respondents, v. COURT HOTEL et al., Defendants; JOSEPH W. HARRIS et al., Appellants.

Nathan G. Gray for Appellants.

Jerome Politzer, Joseph A. Pritchard and Maurice J. Hyman for Respondents.

GOODELL, J.—This suit was commenced by 24 guests of the Court Hotel to prevent by injunction the termination of their occupancies. The defendant Harris, a resident of Alameda County, moved for a change of place of trial to that county on the ground of residence, and the defendant Bolzendahl, a resident of San Mateo County, joined therein. The motion was denied. After hearing, a preliminary injunction was issued. The defendants appeal from both orders.

The Court Hotel, a 6-story building of 133 rooms is located on Bush Street in downtown San Francisco. On March 15, 1943, George F. Bigley, then its owner, leased the hotel to Elsie Schell for a 10-year term. On August 6, 1943, she assigned the lease to Adell B. Whittaker and appellant Bolzendahl. On March 9, 1944, Bigley deeded the property to appellant Harris. On June 5, 1944, Adell B. Whittaker assigned her half interest in the lease to her co-lessee, Bolzendahl. On January 30, 1945, Bolzendahl by a written instrument sold to Harris his leasehold interest, the good will and all furniture and furnishings in the hotel, for which Harris paid Bolzendahl a substantial money consideration. By a contemporaneous writing Bolzendahl agreed to remain in possession and continue to operate the hotel for the account of Harris until March 1, 1945, and that during that intervening month he

would assist Harris in obtaining the possession of all the rooms by March 1. It was also agreed that Bolzendahl would accept no rentals for any period subsequent to March 1.

Appellant Harris had been negotiating for the leasing to The Pacific Telephone & Telegraph Co. of the hotel premises *as a unit* for use as a dormitory for its telephone operators needed in San Francisco because of the war. On September 28, 1944, Harris wrote to the Office of Price Administration at San Francisco asking its advice as to his "position as an owner of this building under the rules and regulations" and on October 9, 1944, its district rent attorney answered that "assuming that the tenant is an utter stranger to the transaction between you and the Telephone Company the subtenants are not protected by the eviction section of the Rent Regulations for Hotels. You would, therefore, be at liberty under the Rent Regulations to pursue your remedies according to California Law."

On January 31, 1945, Harris caused to be served on all occupants of the hotel a "notice to vacate," addressed to each of them by name and room number, signed "Joseph W. Harris owner," reading as follows:

"You are hereby notified that the tenancy of H. Bolzendahl, operating lessee of the above mentioned Hotel, has terminated, and the undersigned demands that you vacate the room you now occupy on or before March 1, 1945, at 12:00 noon o'clock.

"The undersigned owner and landlord seeks in good faith to recover possession of the room you now occupy for the immediate purpose of substantially altering or remodeling it in a manner which cannot practicably be done with you in occupancy, and the plans for such alteration or remodeling have been approved by the proper authorities.

"As to the undersigned you are a subtenant, and this notice is not to be construed as changing that relationship in any manner whatsoever."

The notices were put into their respective mail boxes. These notices, admittedly received by the occupants, precipitated the filing of this suit on February 27, 1945. An order to show cause restrained the defendants from interfering with the plaintiffs' possession pending a hearing. After hearing, a preliminary injunction was issued restraining the defendants from removing the plaintiffs by action or otherwise, contrary to the provisions of the Emergency Price Control Act of 1942

and the rent regulations thereunder, as long as they paid their rent. A $3,000 bond was required and furnished.

The first question presented for decision is whether the court should have granted the motion for change of venue. "The right of a defendant to have an action brought against him tried in the county in which he has his residence is an ancient and valuable right, which has always been safeguarded by statute and is supported by a long line of judicial decisions. 'The right of a plaintiff to have an action tried in another county than that in which the defendant has his residence is exceptional, and, if the plaintiff would claim such right, he must bring himself within the terms of the exception.' " (*Brown* v. *Happy Valley etc. Inc.*, 206 Cal. 515, 521 [274 P. 977], citing *Brady* v. *Times-Mirror Co.*, 106 Cal. 56 [39 P. 209].)

*Neet* v. *Holmes*, 19 Cal.2d 605, 607 [122 P.2d 557], holds that "The question of the transitory or local character of the causes of action must be determined from the allegations of the complaint on file at the time the motion was made and from the nature of the judgment which might be rendered thereon, assuming the truth of the allegations." See, also, *Weygandt* v. *Larson*, 130 Cal.App. 304 [19 P.2d 852] and cases cited.

That being so, an inquiry into the allegations of the complaint is in order. They are to the effect that on January 30, 1945, appellant Harris took over the management, ownership and operation of the hotel; that the plaintiffs occupy rooms therein as tenants from month to month; that in February, 1945, they attorned to the owner as his tenants occupying said rooms, and paid the February rent. They allege the shortage of housing due to the war, recognized by the federal government in designating San Francisco as a defense rental area; that each of the plaintiffs has a valuable possessory and property right in said housing accommodations in the hotel and it will be impossible for them to obtain other accommodations, and if evicted they will suffer irreparable injury not to be measured in monetary damages. They allege the service of the notice to vacate and that it does not conform to state law; that defendants have refused to accept the March rent and threaten to evict the plaintiffs; that the defendants have not obtained the permission or consent of the Office of Price Administration; that they are seeking in rerenting the building to circumvent the law and the O. P. A. regulations and to profiteer. The prayer is that the defendants be prevented by

injunction from removing the plaintiffs or interfering with their possession.

*Neet* v. *Holmes, supra,* holds also that: "The pleader is required to frame his complaint to show clearly that he is entitled to retain the trial of the action in the county in which it was commenced." *Sheeley* v. *Jones,* 192 Cal. 256 [219 P. 744] holds the same, and, further, that if there are any ambiguities they must be resolved against the pleader and in favor of the defendant's right to have the case tried in the county of his residence. (Citing *Ah Fong* v. *Sternes,* 79 Cal. 30 [21 P. 381].)

After the notice of motion for change of venue had been filed and apparently with a view to giving the complaint a quiet title complexion, the plaintiffs filed an affidavit in which they stated in conclusional language the purpose of this suit as follows: "That the above entitled action was commenced for the purpose of establishing and determining an estate or interest of plaintiffs and each of them in the real property ... to-wit in the respective tenancies of plaintiffs in said Court Hotel ... and to determine the right or interest of plaintiffs and each of them in and to the respective portions of said real property as mentioned and set forth in said complaint and under which they hold as tenants thereof and to determine their right to hold possession of said respective portions of said premises and also for the determination of the right of the defendants to reenter the same and/or to evict plaintiffs therefrom."

The complaint does not purport to state a case to quiet title. The prayer seeks only an injunction preventing the dispossession of the plaintiffs, and if there had been no appearance and a default had been entered, such preventive injunction would have been the full measure of plaintiffs' relief. In *Eckstrand* v. *Wilshusen,* 217 Cal. 380, 381 [18 P.2d 931], it is said that, "In order to determine whether the action is local or transitory it is necessary to ascertain the true character of the action as disclosed by the complaint, and the character of the judgment which might be rendered upon a default thereto." (Citing *Grocers etc. Union* v. *Kern etc. Co.,* 150 Cal. 466 [89 P. 120]; *McFarland* v. *Martin,* 144 Cal. 771 [78 P. 239], and 25 Cal.Jur. p. 855.) The plaintiffs' self-serving statement in the affidavit that the purpose of the action was to establish the "estate or interest of plaintiffs and each of them in the real property" cannot convert this into a *local*

action, when the complaint itself does not show it to be such. In *Ah Fong* v. *Sternes,* 79 Cal. 30, 33 [21 P. 381], it is said that "He [the plaintiff] cannot deprive the defendant of his right to a change of venue by the addition of something to the complaint. If this were not the rule, it would be very easy for a plaintiff to defeat the defendant's right in the matter. All that plaintiff would have to do would be to add another cause of action to his complaint. . . . And the 'right is to be determined by the condition of things existing at the time the parties claiming it first appeared in the action' (*Remington S. M. Co.* v. *Cole,* 62 Cal. 318; *Buell* v. *Dodge,* 57 Cal. 645)." To the same effect is *Brady* v. *Times-Mirror Co., supra.* If such reinforcement cannot be accomplished by an amendment to the complaint, it certainly cannot be accomplished by statements by the plaintiffs in an affidavit of their purposes.

■ Under the authorities the plaintiffs were not *tenants* at all. They were *lodgers* and "A mere lodger is one who occupies a room or portion of a tenement, which is under the control or in the occupancy of another, and he has no interest in real estate." (*McDowell* v. *Hyman,* 117 Cal. 67, 71 [48 P. 984].) In *Fox* v. *Windemere etc. Co.,* 30 Cal.App. 162, 164 [157 P. 820], it is said: "Where . . . the testimony shows that the house was under the direct control and supervision of the owners, that the rooms were furnished and attended to by them, and that they or their servants retained the keys thereto, a person renting such a room makes himself a lodger and not a tenant" (citing cases). In *Edwards* v. *Los Angeles,* 48 Cal. App.2d 62, 67 [119 P.2d 370], the court quotes from 1 McAdam on Landlord and Tenant, 5th ed., p. 239, as follows: "Guests in a hotel, boarders in a boarding house, and roomers or lodgers, so called, are generally mere licensees and not tenants. They have only a personal contract, and acquire no interest in the realty." In *Roberts* v. *Casey,* 36 Cal.App. 2d Supp. 767, 771-3 [93 P.2d 654] the cases are reviewed and discussed. See, also, *People* v. *Vaughan,* 65 Cal.App.2d Supp. 844, 852 [150 P.2d 964]. The affidavits filed by the defendants (which are not contradicted) show the plaintiffs' occupancy to be simply that of the ordinary furnished hotel room with regular hotel service supplied by the proprietor. It cannot be the law that persons occupying such a status can sue to establish their "estate or interest" in real property.

By the same affidavit the plaintiffs seek to give the case a contractual complexion so as to bring the case within section

395, Code of Civil Procedure, for therein they state "that the respective contracts of tenancy wherein the respective plaintiffs hold possession and occupy the respective portions" of the hotel "were in fact entered into and made with the defendants" in San Francisco and "that the defendants in said contracts agreed to perform the obligations thereof, to-wit: to place said plaintiffs in possession and occupancy ... and to collect the rentals thereof." Further it is stated *that defendants placed them in possession and collected the rentals.* No breach is alleged. The record shows that some of the plaintiffs had lived in the Court Hotel for as long as ten years which means that they had been there long before the Bigley-Schell lease was made in 1943. There had been a succession of lessees, and these plaintiffs had rented their rooms under various lessees and had stayed there after the intervening lessees had departed. Harris had never been in contractual relations with any of the roomers, and the only allegation of the complaint which even hints at a contract between plaintiffs and Harris is contained in paragraph VI:

"That on or about February, 1945, the said plaintiffs and each of them, individually attorned to the defendant, Joseph W. Harris, as his tenants from month to month occupying said rooms in said premises, and plaintiffs and each of them have paid over to said defendant through his duly authorized and ostensible agents their rent for the said housing accommodations and said rent was accepted by said defendants as aforesaid through said agents, as rental for said hotel accommodations for February, 1945."

Since there is no legal relation of tenancy in the case of lodgers in a hotel the allegation of attornment is the unfounded legal conclusion of the pleader. Conceding that in some circumstances a contract for an indefinite occupancy from month to month might be implied from the acceptance of rent by Harris for the month of February, other allegations of the complaint effectively negative the existence of any such implied contract in this case. Paragraph VIII of the complaint sets out in *haec verba* the notice to vacate quoted above and alleges that it was placed in plaintiffs' boxes on or about January 31, 1945. Acceptance of February rent after plaintiffs had been given notice to vacate on March 1 would only support the inference of an implied contract to accept the plaintiffs as roomers for the month of February. If the plaintiffs chose to remain during February in the face of the

notice to vacate on March 1 Harris was entitled to the February rent and his acceptance of it would not constitute a waiver of the notice to vacate. (*Conner* v. *Jones,* 28 Cal. 59; *Byrne* v. *Morrison,* 25 App.Cas. (D.C.) 72.) The allegations of the complaint read together will not support the inference of any contract between plaintiffs and Harris covering any period beyond the month of February and the rights, if any, of plaintiffs to continue in occupancy beyond that date cannot be contractual, but must rest strictly upon the O. P. A. regulations adopted pursuant to act of Congress, i. e. must be statutory.

The plaintiffs' assertion in their affidavit that this "is not an action to enforce the O. P. A. Regulations" is best answered by the language of the injunction itself. It restrains the defendants from "directly or indirectly removing or attempting to remove or threaten to remove plaintiffs herein as such tenants and occupants of said Court Hotel from any hotel room occupied by them *contrary to the provisions of said Emergency Price Control Act of 1942, as amended, and said Rent Regulations for hotels and rooming houses, issued in pursuance thereof, by the U. S. Office of Price Administration* and from interfering with plaintiffs and each of said plaintiffs' possession and enjoyment of said hotel accommodations occupied by them in said Court Hotel or from locking plaintiffs or any of them out of said accommodations or from instituting any action at law or at equity to remove or interfere with such occupancy *contrary to said United States Price Control Act and the Rent Regulations for hotels issued in pursuance thereof,* as long as plaintiffs pay the rent for said rooms and accommodations and are not in default, . . . ." (Emphasis added.)

It is purely and simply a suit in equity, in personam, to prevent the defendants from interfering with plaintiffs' possession. It is not an action to enforce a contract or to prevent a breach thereof, and it is not concerned with the title to, or any estate in, real property. In our opinion it is clearly a transitory action and the motion for change of venue should have been granted.

The authorities hold that on a reversal "The proceeding is left where it stood before the judgment or order was made, and the parties stand in the same position as if no such judgment or order had ever been rendered or made. They have the same rights which they originally had. . . ." (2 Cal. Jur. p. 996, § 590; see, also, 25 Cal.Jur. p. 918, § 50.)

Restitution will be ordered in proper cases (see *Ashton* v. *Heydenfeldt*, 124 Cal. 14 [56 P. 624]). See *Cowdery* v. *London etc. Bank*, 139 Cal. 298 at 304, 305 [73 P. 196, 96 Am.St.Rep. 115], for a review of the cases. ▮ Without attempting to lay down any general rule, it would seem that in this particular case the order granting the preliminary injunction should be reversed. It has been well said with respect to a motion for change of venue that "If the defendants are entitled to have their motion granted they are entitled to have every motion or proceeding in the case heard before the superior court of the county of their residence." (*Brady* v. *Times-Mirror Co.*, 106 Cal. 56, 61 [39 P. 209], followed in *Nolan* v. *McDuffie*, 125 Cal. 334, 337 [58 P. 4].) ▮ Such reversal will restore the parties to their *status quo ante*, as, under the authorities, they should be restored.

In *Howell* v. *Thompson*, 70 Cal. 635 [11 P. 789] it appears that after the trial court had denied a change of venue and an appeal had been taken, it proceeded to try the case on the merits. The Supreme Court said, "This court has jurisdiction of an appeal from an order denying a motion to change the place of trial; and there can be no doubt that when this court reverses such an order, and directs that the court below shall make and enter an order transferring a cause for trial to another county, its jurisdiction includes full power and authority to make all orders or judgments necessary to render effectual its judgment on appeal from the order denying the change of the place of trial. Unless the judgment can be set aside by this or the Superior Court, 'the party appealing,' as was said in *Pierson* v. *McCahill, supra*, 'might be forced to a trial in the wrong county, before the appeal was determined, and thus he would lose all benefit from his appeal in case the order should be reversed.' " The court concluded as follows: "If the fact that a final judgment had been entered by the Superior Court had been made to appear to this court when the appeal from the order refusing a change of the place of trial was heard, this court could have provided in its judgment reversing the order for setting aside the judgment of the court below. This without inquiring whether any error occurred at the trial of the cause below, but simply because the order of this court would be of no avail if the judgment below was allowed to stand." In speaking of the reversal of an order granting a change of venue, the court said in *Christin* v. *Superior Court*, 9 Cal.2d 526, 532 [71 P.2d 205, 112 A.L.R.

1153], ''The effect of the reversal would be to nullify the trial in San Francisco and any judgment or rights obtained as a result thereof, restoring all parties to their positions prior to the rendition of the void judgment, i. e., to a position where the cause might be brought to trial in Los Angeles. (*Howell* v. *Thompson,* 70 Cal. 635 [11 P. 789].) '' See, also, *Pacific Construction Finance Co.* v. *Kramer,* 41 Cal.App.2d 461, 462 [106 P. 2d 634].

The order refusing to change the place of trial is reversed, and the order granting the preliminary injunction is reversed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied January 26, 1946, and respondents' petition for a hearing by the Supreme Court was denied February 21, 1946.