612 P.2d 710

**George R. and Donnelle C. HAW-THORNE dba Kings Rest Court, Protestants-Appellants,**

v.

**DIRECTOR OF the REVENUE DIVISION TAXATION AND REVENUE DEPARTMENT, State of New Mexico, Respondent-Appellee.**

**No. 3882.**

Court of Appeals of New Mexico.

May 20, 1980.

George R. Hawthorne, pro se.

Jeff Bingaman, Atty. Gen., Richard M. Kopel, Sp. Asst. Atty. Gen., Santa Fe, for respondent-appellee.

## OPINION

HERNANDEZ, Judge.

Taxpayer owns and operates a motel-type complex in Santa Fe. The Taxation and Revenue Department (Department) assessed the Taxpayer $611.11 for gross receipts tax, penalty, and interest for the reporting period January 1974 to August 1976. This assessment was based on the Department's determination, following an audit, that the Taxpayer had improperly deducted receipts from eight rental units and amounts paid to a third party for the lease of television sets which the Taxpayer had placed in these rental units. Taxpayer protested the assessment pursuant to § 7–

1–24, N.M.S.A.1978, and an administrative hearing was held. The hearing examiner issued a decision and order in which the penalty assessed was abated and the balance of the protest was denied. Taxpayer appeals. The issue is whether there is substantial evidence to support the decision and order.

Section 7–9–53 (A), N.M.S.A.1978, permits a deduction from gross receipts for receipts from the sale or lease of real property, but subsection (B) of that section states that: "Receipts received by hotels, motels, . . . from lodgers, guests, roomers or occupants are not receipts from leasing real property for the purposes of this section". Taxpayer testified that his complex is divided into two separate units, one consisting of motel units and the other of apartment units, and that he operates the two units as separate businesses. Accordingly, Taxpayer testified, he deducted the receipts from the apartment units from his gross receipts pursuant to § 7–9–53, supra. The Department conducted an audit of Taxpayer's records and issued the assessment on the basis that the apartment units were motel rooms in fact. The decision and order affirmed the assessment, except for the penalty provision.

Section 7–1–5 (G), N.M.S.A.1978 provides:

Any regulation, ruling, instruction or order issued by the [commissioner] is presumed to be in proper implementation of the provisions of the revenue laws administered by the [bureau.]

And Section 7–1–17 (C), N.M.S.A.1978 provides:

Any assessment of taxes made by the [bureau] is presumed to be correct.

The burden is on the taxpayer protesting an assessment by the bureau of revenue to overcome the presumption that the bureau's assessment is correct. [*Archuleta v. O'Cheskey*, 84 N.M. 428, 504 P.2d 638 (Ct.App.1972)]. This presumption can be overcome by presenting evidence and showing that the decision of the bureau is not supported by substantial evidence. [*Floyd & Berry Davis Co. v. Bureau of*

*Revenue,* 88 N.M. 576, 544 P.2d 291 (Ct.App. 1975)].

■ The record reflects that Taxpayer did not overcome this presumption and that there is substantial evidence to support the Decision and Order's finding that the "apartment" units were operated as motel rooms in fact—or at least to support such an inference. This Court held in *Waldroop v. O'Cheskey,* 85 N.M. 736, 516 P.2d 1119 (Ct.App.1973) that where more than one inference could be drawn, the commissioner's determination is conclusive.

Taxpayer's evidence consisted of his own testimony, bank statements and cancelled checks from a single checking account in which Taxpayer claims the deposits of five separate businesses are deposited, and 15,-000 registration cards for the period in question. Taxpayer might have been able to produce sufficient evidence to support a finding that the "apartment" units qualified for a deduction under § 7–9–53, supra, had he: (1) introduced adequate records [See § 7–1–10 (A), N.M.S.A.1978]; or (2) introduced written agreements suggesting the creation of a landlord-tenant relationship; or (3) called occupants of the "apartment" units to testify that the relationship did, in fact, exist. He did none of these. In fact, he refused to allow the Department to interview any of the occupants of the disputed units. It is our opinion that there is sufficient evidence in the record to support the decision and order of the hearing examiner on this issue.

■ The second issue involving Taxpayer's deduction from his gross receipts of the amounts paid to a third party for the lease of television sets which Taxpayer placed in the "apartment" units, is really a sub-issue of the first issue decided above. Section 7–9–50, N.M.S.A.1978, provides: "Receipts from leasing tangible personal property, . . . *the receipts from the rental or lease of which are deductible under Subsection C of Section 7–9–53,* . . . may be deducted from gross receipts if the lease is made to a lessee who delivers a nontaxable transaction certificate to the lessor. *The lessee delivering the nontaxable transaction certificate may not use the tangible personal property in any manner other than for subsequent lease* in the ordinary course of business." [Emphasis added.] Section 7–9–53 (C), supra, provides: "Receipts attributable to the inclusion of furniture or appliances furnished as part of a *leased or rented . . . apartment* by the landlord or lessor may be deducted from gross receipts." [Emphasis added.]

The Department claims, and the hearing examiner found, that the occupants of the "apartment" units (which we have determined to be motel units) did not lease the televisions, but merely had a license to use them. We agree. G. R. Regulation 14.5:2 states that leased television sets placed in motel rooms are not leased to the occupants. There is no evidence in the record that the occupants paid any additional fees for the televisions.

Finally, Taxpayer continues to argue on appeal that the audit conducted by the Department is incorrect. We find this argument to be without merit since the record reflects that the Department agreed, during the hearing, to accept Taxpayer's own figures as the tax base for the "apartment" receipts and the television payments.

We find the other issues raised by Taxpayers to be without merit.

The decision and order of the hearing examiner is affirmed.

IT IS SO ORDERED.

WALTERS, J., concurs.

SUTIN, J., dissents.

SUTIN, Judge (dissenting).

I dissent.

This case is a matter of first impression.

Taxpayer is the owner and operator of a real estate complex located in Santa Fe, New Mexico, one portion of which is registered with the Bureau as "King's Rest Court." The complex consists of:

(A) A motel area operated as "King's Rest Court" that is "U"-shaped and numbered 1 through 21. This area has its own

drive-in entrance and parking area. At the entrance of this area is a large sign "King's Rest Court" which also lists "kitchenettes." All gross receipts taxes were paid on receipts from this area.

(B) An apartment area owned and operated as "King's Rest Apartments." It consists of two "I"-shaped buildings which face each other. It has a total of 8 furnished units, numbered 22 through 29, with four units in each building. This area has its own drive-in entrance and at the end of each "I" building facing the highway are neon signs which say "Apts." This apartment area is immediately adjacent to, and north of, the motel area. This area is not registered with the Bureau.

The question for decision is:

Was Taxpayer entitled to deduct the gross receipts obtained from "King's Rest Apartments"?

Section 7–9–53, N.M.S.A.1978 reads in pertinent part:

A. Receipts from the . . . lease of real property . . . may be deducted from gross receipts. . . .

B. Receipts received by hotels, *motels*, rooming houses . . . or similar facilities . . . *from lodgers, guests, roomers, or occupants are not receipts from leasing real property for the purposes of this section.*

C. *Receipts attributable to the inclusion of furniture or appliances furnished as part of a leased or rented . . . apartment by the landlord or lessor may be deducted from gross receipts.* [Emphasis added.]

Common sense dictates that the legislature made a reasonable classification. It taxed gross receipts from the transient use of a motel and allowed the deduction of gross receipts from a leased or rented apartment. The lessor rents an apartment to a lessee for the use, occupation and enjoyment of the premises.

From the plain reading of Subsections A and C, the receipts from "King's Rest Apartments" may be deducted from gross receipts if taxpayer rented the apartments to lessees.

The Commissioner converted the apartment area into a motel area because of (1) banking methods used by taxpayer, (2) the method of handling keys to rooms, and (3) one statement made by taxpayer, to-wit: "[H]e asserted in his letter to the Director that the premises are private property and that 'you and your employees are limited solely to access to the office' ". The Commissioner says:

This statement by the Taxpayer clearly indicates that the possession and control of KRA [King's Rest Apartments] was retained by the Taxpayer and not relinquished to the so-called tenants.

Items (1) and (3) do not support the Commissioner's Decision and Order, and item (2) is not supported by the evidence.

This appeal involves the paltry sum of $563.54 assessed against Taxpayer for the gross receipts obtained from his apartments for a period of two and one-half years. Perhaps because of the small amount involved, Taxpayer appeared pro se. He also testified as an owner and operator of businesses, as a licensed professional engineer and land surveyor, and as a real estate operator. He was confronted with extensive audits made by the Bureau, with administrative hearings held on four separate occasions from May 24, 1978, to September 29, 1978. Taxpayer became disgruntled, uncooperative and recalcitrant. However, he did not have a lawyer or a certified public accountant to convince the Hearing Officer and the Commissioner of his right to a deduction. Nevertheless, the Hearing Officer should keep his ears open to the pleas of a small taxpayer. During the conferences held, the Hearing Officer should advise the taxpayer of the guidelines to follow to seek relief from the burdens of taxation. Perhaps, if the findings of the Hearing Officer had been explained to Taxpayer, this litigation may not have followed.

In his Statement of Proceedings, Taxpayer stated:

The Taxpayer is at the mercy of the Bureau of Revenue . . . .

I would request a ruling so that I can be guided as to how to handle the business in the future so I do not have to go through this traumatic affair again.

The guidelines will appear from a careful reading of this opinion.

The receipts from "King's Rest Apartments" may be deducted from gross receipts if the relationship of landlord and tenant existed between Taxpayer and tenant of each apartment. For this relationship to exist, the tenant must have exclusive possession of the apartment for the rent paid to the landlord. By exclusive possession is meant that the "apartment is the tenant's house. Over that he has full control. One entering there without his consent is a trespasser." *Wolcott v. Ashenfelter*, 5 N.M. 442, 450, 23 P. 780, 8 L.R.A. 691 (1890); *Scanlan v. La Coste*, 59 Colo. 449, 149 P. 835 (1915). The word "apartment" in its usual and ordinary connotation signifies that the occupants acquired exclusive possession and are tenants rather than roomers. This fact is strengthened by testimony that the landlord does not live in the apartment area. *Washington Realty Co. v. Harding*, 45 A.2d 785 (D.C.Mun.App.1946). In fact, we will presume that it was the intention of the parties to create the relationship of landlord and tenant unless there is some proof indicating a contrary intention. We look to the rental agreement and the character of each particular occupancy. *Marden v. Radford*, 229 Mo.App. 789, 84 S.W.2d 947 (1935).

In sum, if the person who rents an apartment agrees to do all work necessary to keep the apartment and furnishings in order, exclusive of the landlord and his servants, the relationship of landlord and tenant is established. *Coggins v. Gregorio*, 97 F.2d 948 (10th Cir. 1938).

On the other hand, if the premises, even an apartment, is under the direct control and supervision of the landlord who attends to the rooms to keep them clean and in order, who retains keys for himself or his servants to have access to the rooms at all times for this purpose, that which is ordinarily done in hotels and motels wherein regular hotel service is supplied, a person renting the room or apartment is a lodger or guest or roomer and is not a tenant. *Fox v. Windemere Hotel Apartment Co.*, 30 Cal.App. 162, 157 P. 820 (1916); *Stowe v. Fritzie Hotels*, 44 Cal.2d 416, 282 P.2d 890 (1955); *Sloan v. Court Hotel*, 72 Cal.App.2d 308, 164 P.2d 516 (1945). A "motel" is a modern development of an inn or hotel, serving transients, and cannot be considered as an "apartment house." *Parrish v. Newbury*, 279 S.W.2d 229 (Ky.1955).

Taxpayer stated in his Brief-in-Chief: Keys to Apartments leased to Tenants are not available to employees since they have no right of entry to the apartment *since the contract to a tenant gives exclusive use to the Tenant.* The Landlord, Mr. Hawthorne does not enter Apartments of any Tenaants [sic] without the Tenant's permission or in case of emergency only. That is the reason that only Mr. Hawthorne can negotiate a contract for an apartment with a tenant *as was testified.* [Emphasis added.]

Taxpayer established that the receipts from the apartment complex could be deducted from gross receipts.

To confirm this conclusion, the history of § 7–9–53 and the necessity for statutory construction follow.

Prior to 1969, Subsection B did not contain the word "motels" or "occupants." In 1970, *Chavez v. Commissioner of Revenue*, 82 N.M. 97, 476 P.2d 67 (Ct.App.1970) held that rental received by taxpayer who leased motel premises to the railroad, and who furnished clean linens for beds and kept bath and toilet facilities clean for use by railroad's employees, was *not* "receipts" from "lodgers, guests or roomers" and was not subject to the Gross Receipts Tax Act.

By way of statutory construction, the court avoided merging a "motel" into a "hotel" even though a "motel" is a modern development of a "hotel." In 1969, the words "motel" and "occupants" were added. Laws 1969, ch. 144 § 43. In a discussion of this statute in *Chavez*, no definition of "occupants" was stated.

After the 1969 addition to the Gross Receipts Tax Act, owners and operators of a real estate complex had to differentiate between the operation of a "motel" and an "apartment" for purposes of the deduction of gross receipts. The difficulty arises over the meaning of "occupants."

An "occupant" is "one who takes the first possession of something that has no owner and thereby acquires title by occupancy . . . one who takes possession under title, *lease* or tenancy at will . . . one who occupies a particular place or premises: *TENANT*, RESIDENT." [Emphasis added.] *Webster's Third International Dictionary, Unabridged.* Under this definition, an "occupant" is a tenant in possession in distinction from a landlord or owner who has legal or constructive possession. *Parsons v. Prudential Real Estate Co.*, 86 Neb. 271, 125 N.W. 521, 44 L.R.A. (N.S.) 666 (1910); *Durfee v. Keiffer*, 168 Neb. 272, 95 N.W.2d 618 (1959); *Leone v. Bilyeu*, 361 Mo. 974, 238 S.W.2d 317 (1951).

When the word "occupant" is used in connection with "motel" in Subsection B, it invades the province of the landlord-tenant relationship set forth in Subsection C. Under Subsection B, receipts of "motels" from occupants who are tenants under a lease are *NOT* receipts from the "lease of real property and may *not* be deducted from gross receipts." But, under Subsection C, receipts of an "apartment" from an occupant, a tenant of a "leased or rented . . . apartment by the landlord," *are* receipts from the "lease of real property" and *may* be deducted from gross receipts. A taxpayer with a real estate complex is placed in an unbearable situation. How can a leased tenancy in a "motel" differ from a leased tenancy in an "apartment" when both are in the same real estate complex?

When we speak in terms of "motels" who accommodate lodgers, we speak in terms of transients who remain overnight and have single rooms; where servants are used during the day to clean rooms, make beds, and keep the room in order. When an "occupant" is mistakenly imposed on this scene, we must turn to rules of statutory construc-tion. They have been stated so often, it is unnecessary to repeat them.

In 1902, the Supreme Court quoted the definition of an occupier as " 'one who is in the use and enjoyment of a thing'." *Gill v. Wallis*, 11 N.M. 481, 492, 70 P. 575, 579 (1902). "Occupant" has been defined as one who occupies or has actual possession of a thing, as distinguished from constructive possession thereof. *Smith v. Magruder*, 566 S.W.2d 430 (Ky.App.1978), or " 'one who has the *actual* use, possession or control of a thing' ". *Redevelop. Author. of Allegheny Cty. v. Stepanik*, 25 Pa.Cmwlth. 180, 360 A.2d 300, 302 (1976).

In order to give effect to the intention of the legislature, the word "occupants" in Subsection B means persons who use and enjoy rooms in motels, persons who are like "lodgers, guests and roomers." Courts have a duty to construe this statute so that all of it will be operative and to construe it in the most beneficial way of which its language is susceptible to prevent absurdity or injustice. We have said that where an ambiguity or doubt exists as to meaning of applicability of a tax statute, it should be construed most strongly against the taxing authority and in favor of those taxed. *New Mexico Electric Service Co. v. Jones*, 80 N.M. 791, 461 P.2d 924 (Ct.App.1969). It is reasonable and normal for the Commissioner, steeped in full-time application of the statutes and rules, to interpret the statute in favor of the State. My many adverse comments in past opinions were intended to encourage the Commissioner to move into the "Administrative Procedures Act." Sections 12–8–1, et seq., N.M.S.A.1978. It was adopted in 1969 and, to date, no public agency has had the integrity to do so and the legislature has failed to make the Act mandatory.

What is also disconcerting is the fact that the Commissioner has known about Taxpayer's real estate complex and operations for many years, yet never challenged him. Instead of taxing Taxpayer, Taxpayer should have been advised as to guidelines for the future.

The Decision and Order of the Commissioner should be reversed and Taxpayer discharged of any tax liability.