516 P.2d 1119

Edward WALDROOP, d/b/a Romeo's Bar and Package, Appellant,

v.

Fred L. O'CHESKEY, Commissioner of Revenue of the State of New Mexico, Appellee.

No. 1187.

Court of Appeals of New Mexico.

Nov. 21, 1973.

Thomas L. Bonham, Albuquerque, for appellant.

David L. Norvell, Atty. Gen., Susan P. Graber, Bureau of Revenue, Asst. Atty. Gen., Santa Fe, for appellee.

OPINION

WOOD, Chief Judge.

After an audit, the Bureau of Revenue issued an assessment for gross receipts and compensating tax, penalty and interest to Waldroop, the proprietor of a bar and package liquor store. Waldroop protested the assessment, and after two partial abatements of the assessment, the protest was denied. Waldroop appeals directly to this Court from the decision of the Commissioner of Revenue denying the protest. Section 72–13–39, N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1973). The assessment was based on the underpayment of taxes. The underpayment was determined after the Bureau auditor computed Waldroop's gross receipts for the audit period. The issues are: (1) whether Waldroop's books and records were inadequate so that the computation of gross receipts was proper and (2) whether the method of computing the gross receipts was erroneous.

*Adequacy of books and records.*

Section 72–13–27(A), N.M.S.A.1953 (Repl.Vol. 10, pt. 2, Supp.1973) requires Waldroop to "* * * maintain books of account or other records in a manner that will permit the accurate computation of state taxes. * * *" Waldroop asserts his books and records met this statutory requirement. On this basis, he asserts the auditor's conclusion that the books and records were inadequate and the auditor's computation of gross receipts, independently of the books and records, were erroneous, as a matter of law. We disagree.

Section 72–13–22, N.M.S.A.1953 (Repl. Vol. 10, pt. 2, Supp.1973) gives the Bureau general investigative authority in "* * * determining the extent of the liability of any person for any tax. * * *" See Torridge Corporation v. Commissioner of Revenue, 84 N.M. 610, 506 P.2d 354 (Ct.App.1972). As part of that investigative authority: "The commissioner shall cause the records and books of account of taxpayers to be inspected or au-

dited at such times as he deems necessary * * *." Section 72–13–28(A), N.M.S.A. 1953 (Repl.Vol. 10, pt. 2, Supp.1973).

The specially concurring opinion in Archuleta v. O'Cheskey, 84 N.M. 428, 504 P. 2d 638 (Ct.App.1972) states:

> "The taxpayer has a duty to provide the commissioner with books and records upon which to establish a standard for taxation as provided by law. If he fails to do so, he cannot complain of the best methods used by the commissioner."

■ The adequacy of a taxpayer's books and records is a question of fact. Torridge Corporation v. Commissioner of Revenue, supra. The fact that Waldroop, in the hearing before the Commissioner, introduced evidence that his books and records were adequate did not require a ruling, as a matter of law, that they were adequate. There was conflicting evidence. This conflicting evidence will be referred to subsequently.

■ Waldroop entered the totals shown on his cash register tapes on other records and then disposed of the cash register tapes. Waldroop contends the denial of his protest "* * * rests upon the mere assertion of the auditor that, in the absence of cash register tapes, Appellant's records are inadequate. * * *" On the basis of this contention, Waldroop makes two "matter of law" arguments. First, he asserts that the failure to retain cash register tapes does not mean that his records are inadequate as a matter of law. Second, he contends that the Bureau, by assessing the taxes against him, is requiring the retention of cash register tapes as support for other books and records; that no such requirement appears either in the statutes or tax regulations and, thus, the imposition of such a requirement without prior notice violates due process of law.

The answer is that nothing in this record shows any "matter of law" decision concerning the cash register tapes, nor is there anything in the record indicating that as a "matter of law" the tapes were required to

be retained. Our review is limited to the record. Section 72–13–39, supra. Not being supported by the record, the "matter of law" arguments concerning the cash register tapes are without merit.

■ Waldroop asserts that as a "matter of fact" his books and records were adequate. The Commissioner necessarily found to the contrary in denying the protest. We consider the evidence before the Commissioner. The auditor testified: (a) there were no substantiating or source documents by which the entries in Waldroop's records could be verified; (b) the only inventory records were entries on profit and loss statements and Schedule C to the federal income tax returns, which Mrs. Waldroop indicated were estimates; (c) the profit and loss statements indicated inventory remained fairly constant on a month to month basis throughout the audit period, yet Schedule C indicated purchases higher than gross receipts reported; (d) Waldroop claimed that he had held special sales and had also sold at discount but there were no records of any kind to substantiate when or how often such sales occurred or prices charged in connection with such sales; (e) bank deposits for 1969 (a part of the audit period) exceeded $77,000.00, yet gross receipts reported were "about $35,000" and the bank deposits substantiated the amount of gross receipts computed by the auditor. Opposed to the foregoing is the evidence presented by Waldroop to the effect that his books and records were adequate.

More than one inference can reasonably be drawn from the evidence. Thus, the question as to the adequacy of Waldroop's books and records was not one of law based on facts permitting only one inference. Since more than one inference can be drawn, the determination made by the Commissioner, that the books and records were inadequate, is conclusive. Archuleta v. O'Cheskey, supra. The Commissioner, having properly determined that the books and records were inadequate, did not err in

considering the auditor's computation of Waldroop's gross receipts.

*Method of computing gross receipts.*

■ The audit period was January 28, 1969, through March 31, 1971. The gross receipts for this period were computed by arriving at a mark-up percentage based on Waldroop's cost of merchandise and selling prices weighted on the basis of types of sales (bar or package) and type of merchandise sold (beer, wine, liquor). See Archuleta v. O'Cheskey, supra. In arriving at the percentage of mark-up, the auditor used two test months, June, 1969 and October, 1970. As to test months, see Torridge Corporation v. Commissioner of Revenue, supra.

Waldroop has three complaints about use of the above method in computing his gross receipts.

First, he asserts that in computing the mark-up for the test month of October, 1970, the auditor used merchandise costs for October, 1970 but used selling prices for June, 1971. He asserts this results in a distorted gross profit figure because of an increase in selling prices in the seven month interval between the two dates. The auditor, however, took the fact of increased selling prices and the seven month time period into account by reducing the mark-up computed for the test month of October, 1970. This reduction in the computed mark-up was 2.18 percent. This percentage reduction is explained by the auditor's testimony that cost comparisons between June, 1969 and October, 1970 had a difference of less than 2 percent and by Waldroop's testimony that: "As the wholesaler goes up, I increase. * * *" This testimony is substantial and supports the inference that the percentage reduction in the computed mark-up for the test month of October, 1970 accounted for the increase in selling prices.

Second, he contends that the computed mark-up was applied to the purchase invoices contained in each month's record file. Waldroop testified that the invoices were placed in the file in the month in which the invoice was paid. On this basis, he asserts there are two distortions in the computed mark-up because: (a) months might elapse between delivery of merchandise and its sale; (b) payment of the purchase invoice might not occur in the month the merchandise was delivered. Waldroop asserts the computed mark-up treated all merchandise as being sold in the month where the purchase invoice appeared in the file. The auditor testified that over the period of a year there was "no great variance" in the inventory; that this, together with quantities purchased, indicated Waldroop was selling what he was buying. Further, the auditor testified that on the basis of quantities purchased, the mark-up computed for a particular month would "remain consistent" throughout the audit period. Still further, the assessment was adjusted for inventory variances not taken into account in the original audit. Waldroop received the benefit of this adjustment in one of the partial abatements. The foregoing is substantial evidence that the computed mark-up was not distorted because Waldroop filed purchase invoices under the month paid.

Third, he claims that the "test months" used in computing the mark-up were selected arbitrarily. The argument is that if other months had been used, the result would have shown an over reporting of gross receipts in those other months. Waldroop contends that since different results are obtained, depending on the test months used, the mark-up used is an arbitrary one. The auditor testified that the two test months used were chosen because they appear as average months for sales. The auditor testified that whether an underpayment or overpayment of taxes was indicated would depend on the test month chosen, but that even if a test month chosen indicated an overpayment of taxes, he would have arrived " * * * at the same per cent [sic] of mark-up. * * *" This mark-up would be applied to the entire audit period, thus, both underpayments and overpayments are taken into consideration in arriving at the total deficiency.

This is substantial evidence that the two test months used in computing the mark-up did not produce an arbitrary result.

Waldroop's complaints as to the methods used in computing his gross receipts are without merit. The Decision and Order of the Commissioner, denying the protest, is affirmed.

It is so ordered.

HENDLEY and HERNANDEZ, JJ., concur.