**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:** _____

**Filing Date: July 17, 2014**

**Docket No. 32,595**

**NEW MEXICO TAXATION
AND REVENUE DEPARTMENT,**

      **Appellant,**

**v.**

**CASIAS TRUCKING,**

      **Appellee.**

**APPEAL FROM THE TAXATION & REVENUE DEPARTMENT
Monica Ontiveros, Hearing Officer**

New Mexico Taxation & Revenue Department
Nelson J. Goodin, Chief Legal Counsel
Santa Fe, NM

for Appellant

Wayne G. Chew, P.C.
Wayne G. Chew
Albuquerque, NM

for Appellee

**OPINION**

**VIGIL, Judge.**

**{1}** Taxpayer Casias Trucking (Casias Trucking) protested a tax assessment issued by the Taxation and Revenue Department (the Department). The hearing officer concluded that the Department's method for calculating the amount of taxes owed by Casias Trucking was unreliable and abated the assessment. Concluding that the hearing officer's decision is supported by substantial evidence, we affirm.

1

**BACKGROUND**

**{2}**     Casias Trucking is a business engaged in the intra-state hauling of construction materials.  Per NMSA 1978, Section 7-15A-3 (1988), Casias Trucking is required to pay a "weight distance tax" on its several trucks that weigh more than 26,000 pounds for miles driven on New Mexico highways.  In 2010, although Casias Trucking had been filing weight distance tax returns and paying weight distance taxes, the Department suspected it was underreporting and selected Casias Trucking for a weight distance field audit for tax years 2007 through 2009.  The Department extended the audit to cover tax years 2004 through 2006 after it identified alleged underreporting in excess of twenty-five percent.  *See* NMSA 1978, § 7-1-18(D) (2013) (allowing for an extension on the statute of limitations for assessing taxes from three years to six years, when taxpayers understate their tax liability on their returns by more than twenty-five percent).

**{3}**     At the commencement of the audit, Mr. Louie Casias, owner of Casias Trucking, met with the auditor and her supervisor and explained that his business did not engage in long-distance hauling but that he mostly traveled on construction sites and that he only used five trucks.  Mr. Casias calculated the mileage his trucks traveled based on the amount of fuel purchased as shown in his fuel receipts, multiplied by the industry average of five miles per gallon. He then reported the mileage to his accountant, who prepared his tax returns.  During the audit, Mr. Casias provided the auditor with all of his fuel receipts for 2007 through 2009, and he went through the fuel receipts for 2007 with the auditor to show that they matched with what he had reported.  He also provided a quarterly summary that he had prepared to show the total number of gallons of fuel purchased referenced by truck number, along with the odometer reading by date.  For reasons which we explain in greater detail below, the auditor decided Mr. Casias's summary was unreliable, and refused to calculate mileage based on the fuel receipts that Mr. Casias had.

**{4}**     As a result of its audit, the Department assessed Casias Trucking with $103,097.36 in weight tax principal, interest, and penalties for 2004 through 2009. Casias Trucking protested the assessment, and a formal hearing was held before a Department hearing officer. At the hearing, the Department presented its audit methodology for calculating the amount Casias Trucking underpaid and Casias Trucking presented evidence that the Department's methodology produced unreasonably high results.  The hearing officer ruled that Casias Trucking provided sufficient evidence that the Department's audit was not reliable and abated the claimed amount due. The Department appeals. NMSA 1978, § 7-1-25(A) (1989) ("If the protestant or secretary is dissatisfied with the decision and order of the hearing officer, the party may appeal to the court of appeals for further relief, but only to the same extent and upon the same theory as was asserted in the hearing before the hearing officer.") Additional pertinent facts are discussed below.

**DISCUSSION**

**{5}**     The Weight Distance Tax Act (the Act), NMSA 1978, §§ 7-15A-1 to -16 (1988, as

amended through 2009), imposes a tax on all registered vehicles with a declared weight over 26,000 pounds that travel on state highways. Section 7-15A-3. "The tax shall be paid by the registrant, owner or operator of a motor vehicle registered in this state to which the tax applies." Section 7-15A-4. The Act sets forth a schedule for the tax rate, or mills per mile rate (mill rate), based upon the declared gross vehicle weight, with the mill rate increasing as the weight increases. Section 7-15A-6(A). Motor vehicles that customarily only carry a full load one way (a one-way haul) are eligible to pay at the reduced rate of two-thirds of the appropriate mill rate. Section 7-15A-6(B)(1)-(2). Taxpayers subject to the Act must report to the Department the total number of miles traveled inside and outside of New Mexico during the tax payment period. Section 7-15A-8(B). However, the tax rate is computed based upon the total number of miles traveled on New Mexico highways during the tax period. Section 7-15A-8(A). Unless certain conditions are met to qualify for annual payments, taxpayers are required to pay weight distance taxes quarterly. Section 7-15A-9.

**{6}** Taxpayers must maintain records that will permit the accurate computation of taxes. NMSA 1978, § 7-1-10(A) (2007). If claiming the one-way haul rate, taxpayers must keep records of loaded miles versus empty miles designated by truck number. 3.12.6.11 NMAC. The records used to make quarterly tax payments must be kept for four years after the payments are made. Section 7-15A-9(D). Upon the Department's request, taxpayers must make their records available "for audit as to accuracy of computations and payments." *Id.*; *see also* 3.1.5.8(A) NMAC ("Taxpayers have a duty to provide the secretary or secretary's delegate, upon request, with books of account and other records upon which to establish a basis for taxation.").

**{7}** The Department's regulations provide that "[t]he adequacy or inadequacy of taxpayer records is a matter of fact to be determined by the secretary or secretary's delegate." 3.1.5.8(A) NMAC. "Failure of a taxpayer to keep adequate books of account or other records will cause the department to use alternative methods to determine or estimate taxes due." 3.1.5.8(B) NMAC. The Department is authorized to use any method or combination of methods to reconstruct or verify taxpayers' records, including but not limited to utilizing bank deposits, comparison to industry standards, and assessment of taxes based on the best information available. 3.1.5.8 (C)-(D) NMAC.

**Presumption of Correctness and Burden Shifting**

**{8}** "Any assessment of taxes or demand for payment made by the department is presumed to be correct." NMSA 1978, § 7-1-17(C) (2007); *see also Torridge Corp. v. Comm'r of Revenue*, 1972-NMCA-171, ¶ 15, 84 N.M. 610, 506 P.2d 354 ("The notice of assessment of taxes based on the audit is presumed to be correct."). "The presumption exists even if the secretary has issued assessments using alternative methods of reconstruction of a tax or has estimated the tax." 3.1.6.12(B) NMAC. "'The effect of the presumption of correctness is that the taxpayer has the burden of coming forward with some countervailing evidence tending to dispute the factual correctness of the assessment made by the secretary.'" *MPC Ltd. v. N.M. Taxation & Revenue Dep't*, 2003-NMCA-021, ¶ 13, 133

N.M. 217, 62 P.3d 308 (quoting 3.1.6.12(A) NMAC); *see Floyd & Berry Davis Co. v. Bureau of Revenue*, 1975-NMCA-143, ¶ 8, 88 N.M. 576, 544 P.2d 291 ("One way for the taxpayer to overcome the presumption of correctness of the assessment is to present evidence and to show that the decision of the [b]ureau is not supported by substantial evidence."); *McConnell v. State ex rel. Bureau of Revenue*, 1971-NMCA-181, ¶ 7, 83 N.M. 386, 492 P.2d 1003 (explaining that the protestor can rebut the presumption of correctness by showing that the department failed to follow relevant statutory provisions or presenting evidence tending to dispute the factual correctness of the assessments). However, "'[u]nsubstantiated statements that the assessment is incorrect cannot overcome the presumption of correctness.'" *MPC Ltd.*, 2003-NMCA-021, ¶ 13 (quoting 3.1.6.12(A) NMAC). "Absent a showing of incorrectness by taxpayers, the audit and notice of assessment of taxes must stand." *Torridge*, 1972-NMCA-171, ¶ 15. On the other hand, when a taxpayer rebuts the presumption, the burden shifts to the Department to demonstrate the correctness of the tax assessment. *MPC Ltd.*, 2003-NMCA-021, ¶ 13; *accord Cibola Energy Corp. v. Roselli*, 1987-NMCA-055, ¶ 11, 105 N.M. 774, 737 P.2d 555.

**The Department's Method**

**{9}** During the audit, Casias Trucking provided the auditor with the records used to calculate its weight distance tax returns, which consisted of receipts from 2007 through 2009 for fuel purchased by cash, credit card, and check, as well quarterly summaries it prepared that showed the date, truck number, ending odometer reading, and amount of fuel purchased. The auditor decided that Casias Trucking's quarterly summaries were unreliable because the odometer readings could not have been an accurate reflection of the actual odometer readings since some of the readings went backward or stayed the same as time progressed.

**{10}** The auditor also determined that she would not use the fuel receipts to calculate the mileage because she concluded that Casias Trucking did not provide fuel receipts for all of its trucks. The auditor determined that Casias Trucking, which had bought and sold trucks throughout the audited period, had titled seven to ten trucks in this period based on permits issued by the motor vehicle division. Yet, the quarterly summaries only accounted for fuel purchases for four to five trucks. Believing that Casias Trucking would not buy "expensive" trucks that it would not use and that it would have more than one to two receipts per month for each truck, she concluded that Casias Trucking did not provide the receipts for all the fuel he had purchased. Thus, the auditor decided not to base her audit on Casias Trucking's records.

**{11}** Since she had determined Casias Trucking's records were inadequate, the auditor selected an alternate method per 3.1.5.8(B) NMAC for calculating the mileage Casias Trucking's trucks had traveled. She used an averaging method based on subtracting the beginning odometer readings from the ending readings for six trucks with available readings, dividing that figure by the number of months that had passed between the readings to get the average miles of travel per month, and multiplying that figure by three to get the average miles traveled per quarter. For the remaining trucks that had unavailable odometer readings,

either because they were sold, placed out of service, or had an unreliable beginning reading, the auditor based the mileage on an average of the quarterly average of the other six trucks.

**{12}**    According to the auditor's calculations, Casias Trucking's trucks had traveled a total of 2,416,571 miles from 2004 through 2009, whereas Casias Trucking had reported 228,992 miles for this period. The auditor credited Casias Trucking for the amount it had paid and calculated the difference due. In addition, even though Casias Trucking was required per 3.12.6.11 NMAC to have its drivers keep records of miles with a full load verses an empty load in order to qualify for the one-way haul rate, the auditor utilized the one-way haul rate in her calculations after investigating and determining that it was customary for Casias Trucking's trucks to leave full and return empty. However, the auditor did not exclude any miles for being exempt ("off road" or off New Mexico highways) because Casias Trucking did not keep records of which miles were traveled on and which were off New Mexico highways.

**Casias Trucking's Evidence**

**{13}**    Mr. Casias testified at the hearing that his trucks could not have possibly traveled the distances calculated by the Department, and he could not have possibly underreported in the amount the Department contended. He said his business consisted of mostly "off road" or "on-site hauling"; meaning the trucks hauled construction materials short distances to construction projects within New Mexico, only traveling on highways to get to the job sites and spending a lot of idle time waiting to dump the materials at the sites. Each truck hauled full loads one-way only and traveled anywhere from thirty to fifty miles per day.

**{14}**    According to Mr. Casias, he only had five to six trucks working at any given time, with the other trucks only rarely being used to replace a broken down truck or for an odd job. To explain how he could afford to let equipment sit idly, he presented titles showing that all of the trucks were purchased used and relatively inexpensively, with a price ranging from $150 to $50,000. He also said that he only employed seven drivers, with one to two drivers serving as backup drivers. However, Mr. Casias did admit that he reported to his accountant who prepared his weight distance taxes only half of the total mileage he calculated because he thought he was entitled to cut his miles in half since he only performed one-way hauls, which he understood to be an erroneous understanding of the law by the time he testified.

**{15}**    According to Mr. Casias, his method of using fuel receipts to calculate mileage traveled produced a more accurate result than the Department's method. He said that the fuel receipts he provided the auditor were for all of the fuel he purchased. When prompted on cross-examination why he only produced fuel receipts for five vehicles when he owned more than that, Mr. Casias maintained that he only used five trucks at any given time and on a rare occasion, once every six to eight months, he would purchase fuel for one of his backup trucks. He only reported on five trucks because those were the trucks being used in his daily business.

**The Hearing Officer's Findings and Conclusions**

**{16}**    The hearing officer found that Casias Trucking owned up to ten trucks during the audit period and that Mr. Casias credibly testified that he did not use all of the trucks at the same time and only employed seven drivers at any given time, both of which the Department failed to rebut.  She also found his description of the type of off-road hauling he did was credible.  Finally, she determined that Mr. Casias credibly testified that he could not have traveled the amount of miles or underreported in the amount the Department alleged.

**{17}**    Although the hearing officer agreed that Casias Trucking's quarterly summaries were unreliable because of the odometer reading anomalies, she also found that Casias Trucking's fuel receipts were "reliable and were not in any way controverted by the Department's evidence."  The hearing officer noted that the Department did not present any evidence that additional fuel receipts existed by way of bank statements or otherwise.  The auditor's notes indicated that Mr. Casias told her he sometimes paid for fuel by check, yet the auditor failed to produce any checks that would show he had purchased additional fuel not accounted for in the receipts. She concluded that "without any contradictory evidence, the amount of money expended by [Mr. Casias] on fuel is uncontroverted."  Additionally, she noted that although the Department refused to use Casias Trucking's fuel receipts, in a prior case it did use a taxpayer's fuel receipts and applied the industry average of miles per gallon to calculate miles driven.

**{18}**    Based on this evidence, the hearing officer concluded that Mr. Casias had overcome the presumption of the correctness of the Department's assessment and that the Department had failed to meet its burden to prove the correctness of its assessment.

**Standard of Review**

**{19}**    Our review of the hearing officer's decision is not de novo.  NMSA 1978, § 7-1-25(A) (1989).  This Court can only set aside a hearing officer's decision and order on appeal if we conclude that it is "(1) arbitrary, capricious or an abuse of discretion; (2) not supported by substantial evidence in the record; or (3) otherwise not in accordance with the law."  Section 7-1-25(C); *see also Wing Pawn Shop v. Taxation & Revenue Dep't*, 1991-NMCA-024, ¶ 8, 111 N.M. 735, 809 P.2d 649 ("On appeal from an agency determination, we determine whether, viewing the evidence in a light most favorable to the agency's decision, the findings have substantial support in the record as a whole.").

**{20}**    We first determine whether there is substantial evidence in the record to support the hearing officer's decision.  *See Floyd & Berry Davis Co.*, 1975-NMCA-143, ¶ 8.  "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177.  When more than one inference can be drawn from the evidence, the determination made by the hearing officer is conclusive. *Waldroop v. O'Cheskey*, 1973-NMCA-146, ¶ 9, 85 N.M. 736, 516 P.2d 1119.

6

"[W]e will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12.

**Analysis**

**{21}** The parties submitted conflicting evidence regarding the completeness of the fuel receipts. Mr. Casias testified that: (1) his trucks only traveled on highways to get to and from a job site and spent the majority of time "on site"; (2) he only used five trucks at any given time, the other trucks sat unused as "backups" in his yard and were used on rare occasions; (3) his trucks including his spare trucks were relatively inexpensive with a purchase price as low as $150; (4) he only employed seven drivers with one to two drivers serving as backup drivers; (5) he kept all the receipts for fuel he purchased; (6) he based the mileage he reported on the amount of fuel he purchased; and (7) calculating the mileage based on his fuel receipts would yield the most accurate results despite not all of the fuel consumed being used on highways.

**{22}** In turn, the Department presented evidence that (1) Casias owned more than five trucks at any given time and up to ten trucks at one time, (2) Casias only submitted receipts for the same five trucks, (3) it believed that Casias would not let expensive equipment sit on his yard without being used, and (4) the auditor believed Casias had purchased more fuel than represented by the receipts Mr. Casias had provided.

**{23}** The hearing officer found Mr. Casias's testimony credible. It is "the sole responsibility of the trier of fact to weigh the testimony, determine the credibility of the witnesses, reconcile inconsistencies, and determine where the truth lies[,]" and we, as the reviewing court, do not weigh the credibility of live witnesses. *Tallman v. ABF (Arkansas Best Freight)*, 1988-NMCA-091, ¶¶ 3, 7, 108 N.M. 124, 767 P.2d 363, *holding modified by Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148. Thus, the hearing officer's credibility determinations stand on appeal.

**{24}** The Department reasserts in its brief to this Court the same arguments it asserted to the hearing officer regarding the inadequacy of Casias Trucking's fuel receipts, offering that the Department "testified in detail about the inadequacy of [Casias Trucking's] fuel receipts." However, by finding Casias Trucking's fuel receipts reliable, the hearing officer rejected the Department's underlying premise for using an alternative method to calculate mileage. Moreover, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12. Here, the hearing officer rejected the Department's testimony regarding the unreliability of the receipts in favor of Casias Trucking's substantial evidence that its fuel receipts were complete and reliable. When more than one inference can be drawn from the evidence, the determination made by the hearing officer that Casias Trucking's fuel receipts were reliable and the amount expended on fuel was uncontroverted, is conclusive. *See Waldroop*, 1973-NMCA-146, ¶ 9 (concluding that since more than one inference could be drawn regarding the adequacy of the taxpayer's

7

record's, the hearing officer's determination that they were inadequate was conclusive). We do not place ourselves in the position of the fact finder and reweigh the evidence. *See Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12. The hearing officer did not err in rejecting the Department's evidence in favor of Casias Trucking's substantial evidence.

{25} The Department further attacks the hearing officer's application of the law on the presumption of correctness and the burden of proof. The Department first contends that the hearing officer erred in concluding that Casias Trucking overcame the presumption of the correctness of its assessment. Citing *Floyd & Berry Davis Co.*, 1975-NMCA-143, ¶ 8, the Department contends that "[t]he presumption of correctness is not overcome when contradictory evidence is presented but taxpayer may overcome the presumption by presenting evidence that the department's decision is not supported by substantial evidence."

{26} While it is true that a taxpayer can rebut the presumption of correctness by presenting evidence that the Department's decision is not supported by substantial evidence, *Floyd & Berry Davis Co.* does not stand for the proposition that such a demonstration is the only way to overcome the presumption. The reviewing agency in *Floyd & Berry Davis Co.* concluded that the taxpayer's evidence was "not compelling in view of the contradictory evidence" and this Court concluded that we must assent to that determination under our standard of review. *Id.* ¶ 11. That is not an indication that the reviewing agency could not have been legally persuaded by the taxpayer's contrary evidence, but simply that it was not persuaded in that particular case. We have the opposite result here. The hearing officer was persuaded by Casias Trucking's conflicting evidence that its fuel receipts were reliable to calculate mileage for weight distance tax purposes. She therefore concluded that Casias Trucking rebutted the Department's presumption of correctness for using an alternative methodology, and we affirm her conclusion since, as we have stated, it is supported by substantial evidence. Thus, we disagree with the Department that the hearing officer impermissibly shifted the burden of proof from Casias Trucking to the Department. Once a taxpayer overcomes the presumption of correctness, the burden shifts back to the Department to prove the correctness of its assessment. *See MPC Ltd.*, 2003-NMCA-021, ¶ 13.

**CONCLUSION**

{27} We affirm.

{28} **IT IS SO ORDERED.**

_____
**MICHAEL E. VIGIL, Judge**

**WE CONCUR:**

8

_____
**TIMOTHY L. GARCIA, Judge**


_____
**J. MILES HANISEE, Judge**