This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37800**

**JUSTIN SODERLUND,**

Petitioner-Appellee,

v.

**VALERIE HENNESSEY-SODERLUND,**

Respondent-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**David P. Reeb, Jr., District Judge**

Harmon, Barnett & Morris, PC
Jared A. Morris
Clovis, NM

Rabern Law
Trace L. Rabern
Santa Fe, NM

for Appellee

Sutin, Thayer & Browne, P.C.
Stevan Douglas Looney
Christina M. Looney
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

**{1}** Valerie Hennessey-Soderlund (Mother) was pregnant with Justin Soderlund's (Father) child at the time he filed for divorce in June 2018. After the child (Child) was

born, the district court entered a stipulated interim order addressing custody and visitation of Child. Approximately two months after Child's birth and one month after entry of the interim order, the district court held a merits hearing and awarded Mother and Father joint legal custody with primary physical custody to Father. Mother argues that the district court erred and abused its discretion by (1) awarding primary physical custody to Father without first finding that a substantial and material change in circumstances had occurred; (2) not making sufficient findings that it was in Child's best interests to take physical custody from Mother; and (3) making findings which were not substantially supported by the evidence.[1] We affirm.

## BACKGROUND

**{2}** Mother and Father married in late May 2017 and lived together in their family residence in Clovis, New Mexico, along with Mother's five children from a previous marriage. Mother is unemployed and Father is an active duty Major in the United States Air Force and, until recently, was stationed at Cannon Air Force Base (Cannon AFB) in Clovis.

**{3}** Less than a year into their marriage, the couple's relationship began to deteriorate and ultimately ended after a family trip to Minnesota in June 2018. During that trip, Mother who was seven months pregnant with Child, became angry and volatile at Father and her children and, at one point, put her five children in a vehicle unattended, left on foot, and could not be located. Father left the family residence on June 14, 2018, and filed for divorce two weeks later on June 26, 2018. Shortly after the divorce petition was filed, Mother filed a motion to relocate to Texas, which the district court granted in a stipulated order on July 11, 2018. Child was born on August 27, 2018, and Mother moved to Texas on October 5, 2018. Five days before she left for Texas, however, the district court entered a stipulated interim order providing among other things, that "[o]n an interim basis and pending final adjudication," Mother and Father would share joint legal custody of minor Child, and that Father would have two hours of unsupervised visitation with Child every weekday at Cannon AFB. The interim order "reserve[d] all issues in this matter for final adjudication." Two days after entry of the order, on October 3, 2018, Mother filed a motion to set aside the stipulated interim order arguing, among other things, that the parties did not agree that they would share joint legal custody of Child and the custody provision, therefore, should not have been included in the order. In his response, Father admitted Mother's allegation, stating that the "parties never discussed sole or joint legal custody[, and that] Petitioner assumed when preparing the [i]nterim [o]rder, that joint legal custody would be awarded based upon [Section] 40-4-9.1[.]"

---

[1] Mother also argues that the district court erred by not implementing a parenting plan as required by NMSA, Section 40-4-9.1(F) (1999). However, the district court has not had an opportunity to hear or rule on this issue and we decline to reach it here. *See Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 24, 314 P.3d 688 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)).

**{4}** The district court held a merits hearing on October 29, 2018, to consider custody and visitation of Child. Father, his mother, Jean Soderlund, and Mother each testified. At the conclusion of the hearing, the district court gave a lengthy oral ruling and granted joint legal custody of Child to Mother and Father, with Father having primary physical custody. The district court's oral ruling was memorialized in the final order on custody and visitation and order of referral for child support (final order), filed on November 9, 2018. It is this final order from which Mother appeals.

**{5}** Because this is a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve discussion of additional pertinent facts as they are necessary to our analysis.

## Discussion

### The District Court Was Not Required to Find a Substantial and Material Change in Circumstances in Order to Award Custody of Child to Father

**{6}** We first address Mother's argument that "there was no allegation nor evidence that there had been a material and substantial change in circumstances since [the entry] of the October 1, 2018[,] Stipulated Interim Order," as this is a threshold issue. Mother appears to argue that the district court's failure to enter findings and conclusions establishing a material and substantial change in circumstances warranting removal of Child from Mother constitutes reversible error. Father responds that the district court was not required to find a substantial and material change because its ruling did not "substitute for any existing custody arrangement." For the reasons that follow, we agree with Father.

**{7}** We review a district court's child custody determination for abuse of discretion, and we will uphold the district court's findings if they are supported by substantial evidence. *Grant v. Cumiford*, 2005-NMCA-058, ¶ 13, 137 N.M. 485, 112 P.3d 1142. "[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Id.* ¶ 21 (alteration, internal quotation marks, and citation omitted).

**{8}** The Joint Custody statute, Section 40-4-9.1(A) provides that "Joint custody shall not be awarded as a substitute for an *existing arrangement* unless there has been a substantial and material change in circumstances[.]" (Emphasis added.) However, not "all interim orders will require a showing of a substantial and material change in circumstances[.]" *Hough v. Brooks*, 2017-NMCA-050, ¶ 24, 399 P.3d 387 (internal quotation marks and citation omitted). In *Hough*, we said that where "the district court's order establishes a durable custody arrangement with . . . no indication that the custody determination would be revisited, any modification of [the interim] order must be accompanied by a showing of a substantial and material change of circumstances." *Id.* On the other hand, we have held that in circumstances where the previous decree provided an expiration date and required parties to "enter into negotiations relating to

future custodial arrangements of the child[,]" modification of the order did not require a showing of a substantial and material change of circumstances. *Brito v. Brito*, 1990-NMCA-062, ¶¶ 2, 7, 110 N.M. 276, 794 P.2d 1205 (internal quotation marks omitted). The latter circumstance more appropriately applies here.

**{9}** In this case, the stipulated interim order, which came about as the result of a court-ordered mediation, was entered to provide a stable custody arrangement until the district court held a hearing on the merits. The interim order provided for joint legal custody of Child with Father having two hours of visitation each weekday. The order was clearly identified as "interim," stated that its provisions were "[o]n an interim basis and pending final adjudication," "reserve[d] all issues in this matter for final adjudication[,]" and made no finding regarding the best interests of Child. In sum, it was a stipulation of the parties which the district court approved. The district court did not consider the merits of the case when it signed the interim order and, in fact, had set the date of the merits hearing two months prior to entry of the parties' agreement regarding custody and visitation of Child. In our view, there was no "durable custody arrangement," *Hough*, 2017-NMCA-050, ¶ 24, requiring the district court to enter findings of a substantial and material change in circumstances.

**{10}** Our decision is further supported by Mother's motion filed in the district court two days after entry of the interim order in which she argued that the interim order did not reflect the "temporary agreement" reached in mediation. Indeed, Father conceded that "the parties never discussed sole or joint legal custody," and that he simply assumed that joint legal custody would be awarded to both parents. Moreover, during the merits hearing, Mother's counsel reiterated that the interim order was a "temporary arrangement" and stated that any pending motions regarding the interim order were moot once the merits hearing began. It is clear that both the district court and the parties knew and intended for the interim order to be a temporary measure until the upcoming scheduled merits hearing. Therefore, we treat the final order, filed November 9, 2018, as the initial custody determination, and hold that the district court did not err by failing to first address whether there had been a substantial and material change in circumstances.

**The District Court Conducted a Best Interests Analysis and Did Not Abuse Its Discretion in Granting Primary Physical Custody to Father**

**{11}** Mother argues that the district court abused its discretion by determining it was in Child's best interest to award primary physical custody to Father and because "the parties themselves determined that it was in the best interests of [Child] to be in Mother's primary physical custody." Father contends that the district court performed a proper best interests analysis and reached its decision based on risks of harm that Mother posed to Child. For the foregoing reasons, and notwithstanding that Mother argued repeatedly below that the parties had no agreement concerning custody, we again agree with Father.

**{12}**  We review the district court's findings for an abuse of discretion. *Grant*, 2005-NMCA-058, ¶ 13. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Id.* (internal quotation marks and citation omitted). "In addition, the failure of a district court to apply the applicable statutory guidelines to order a change of custody will constitute an abuse of discretion." *Hough,* 2017-NMCA-050, ¶ 18.

**{13}**  "The guiding principle in child custody determinations is the best interests of the child." *Id.* ¶ 28; *Jaramillo v. Jaramillo*, 1991-NMSC-101, ¶ 13, 113 N.M. 57, 823 P.2d 299 ("The 'best interests criterion' . . . is the lodestar for determining a custody award, under both statute and case law in New Mexico[.]"). Pursuant to NMSA 1978, Section 40-4-9(A) (1977), "[i]n any case in which a judgment or decree will be entered awarding the custody of a minor, the district court shall, if the minor is under the age of fourteen, determine custody in accordance with the best interests of the child." The statute further specifies that the district court must "consider all relevant factors" in its best interests analysis, including:

> (1)     the wishes of the child's parent or parents as to his custody;

> (2)     the wishes of the child as to his custodian;

> (3)     the interaction and interrelationship of the child with his parents, his siblings and any other person who may significantly affect the child's best interest;

> (4)     the child's adjustment to his home, school and community; and

> (5)     the mental and physical health of all individuals involved.

*Id.* When a district court is determining whether to award joint custody, the court is required to consider not only the factors discussed above, under Section 40-4-9(A), but also the following factors under Section 40-4-9.1(B):

> (1)     whether the child has established a close relationship with each parent;

> (2)     whether each parent is capable of providing adequate care for the child throughout each period of responsibility, including arranging for the child's care by others as needed;

> (3)     whether each parent is willing to accept all responsibilities of parenting, including a willingness to accept care of the child at specified times and to relinquish care to the other parent at specified times;

(4)     whether the child can best maintain and strengthen a relationship with both parents through predictable, frequent contact and whether the child's development will profit from such involvement and influence from both parents;

(5)     whether each parent is able to allow the other to provide care without intrusion, that is, to respect the other's parental rights and responsibilities and right to privacy;

(6)     the suitability of a parenting plan for the implementation of joint custody, preferably, although no necessarily, one arrived at through parental agreement;

(7)     geographic distance between the parents' residences;

(8)     willingness or ability of the parents to communicate, cooperate or agree on issues regarding the child's needs; and

(9)     whether a judicial adjudication had been made in a prior or the present proceeding that either parent or other person seeking custody has engaged in one or more acts of domestic abuse against the child, a parent of the child or other household member.

"The 'best interests' test is broad and vests the [district court] with considerable discretion[,]" however that discretion "must be consistent with the evidence." *Schuermann v. Schuermann*, 1980-NMSC-027, ¶ 8, 94 N.M. 81, 607 P.2d 619. The district court need not make point-by-point findings to correspond to the statutory factors, but must "sufficiently tracks the factors, indicating that the [district] court considered them in making its decision." *Thomas v. Thomas*, 1999-NMCA-135, ¶ 16, 128 N.M. 177, 991 P.2d 7 (finding no abuse of discretion where the district "court's order indicates . . . concern[] about the emotional well-being of the children and that the children had close relationships with both parents, each of whom was able to take care of the children").

**{14}** Mother contends that "the district court made no finding(s) and made no conclusion that it was in [Child]'s best interest to take physical custody of [Child] from Mother and place physical custody with in Father." Contrary to Mother's assertion, however, the district court made detailed and specific findings, including:

b.     The [c]ourt finds that [Mother] has prior experience raising children where [Father] has no such experience;

c.     The [c]ourt finds that the issue comes down to the credibility of the parties. The [c]ourt believes a trial court is in a good position to evaluate a witness's credibility. In comparing the parties' testimony and

the exhibits, the [c]ourt finds that [Mother] does not come across as credible and that [Mother]'s testimony contradicted the admitted [e]xhibits;

      d.      The [c]ourt finds [Father] to be more level-headed and better able to develop [C]hild's social and emotional needs;

      e.      The [c]ourt finds that [Father] is more emotionally stable than [Mother] and . . . that there was ample testimony that [Mother] was volatile with her other children;

      f.      The [c]ourt is concerned with [Mother]'s volatility and emotional anxiety, to include angry outbursts . . . ;

      g.      The [c]ourt is even more concerned with [Mother]'s parental alienation of [Father]. . . . ;

      h.      The [c]ourt finds Exhibit 3 . . . shows [Mother]'s suicidal ideation, [and] willingness to abandon her other children[.] . . . ;

      i.      The [c]ourt finds Exhibit 3 . . . document[s Mother]'s emotional instability and parental alienation.[2]

Additionally, the district court delayed transfer of primary physical custody in accommodation of Child's need to breastfeed and provided a visitation schedule.

**{15}** The district court considered all relevant factors. A newborn infant cannot inform the court of their wishes, has little to no interaction and interrelationship with his or her parents or other relatives, and has little to no adjustment to his or her home, school, and community. *See* §§ 40-4-9(A)(2)-(4), -9.1(B)(1). There were also no prior judicial adjudications regarding domestic abuse to consider. *See* § 40-4-9.1(B)(9).[3] Both parents expressed their wishes as to custody and provided information regarding the current and prospective geographic distance from the other's residence. *See* §§ 40-4-9(A)(1), (5), -9.1(B)(7). Thus, the district court considered the relevant factors. The district court's biggest concern—stated in both its oral and written ruling—was the emotional and physical well-being of Child, the emotional instability of Mother, Mother's apparent willingness to abandon her other children, and Mother's parental alienation of

---

2Mother alleges that Father has now engaged in parental alienation; however, the alleged violations occurred after issuance of the final order, the district court has not heard the issue, and the violation is alleged in the reply brief. Therefore, we do not address it. *See Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 15, 288 P.3d 902 (stating that we do not consider an appellant's arguments that were not raised in the brief in chief, unless such arguments are directed to new arguments or authorities in the answer brief); *see also Durham v. Guest*, 2009-NMSC-007, ¶ 10, 145 N.M. 694, 204 P.3d 19 (stating that the "reference to facts not before the district court and not in the record is inappropriate and a violation of our Rules of Appellate Procedure").

3There was testimony regarding a CYFD report concerning Mother and her children, which was found to be unsubstantiated. However, there is no indication in the record that the district court relied on the report in making its determination.

Father. The findings above support the district court's concerns and the remaining statutory factors. *See* § 40-4-9.1(B)(2)-(4), (7)-(8). We conclude that the district court appropriately considered the relevant factors, made specific findings regarding those factors, and determined custody based upon the best interests of Child.

**Substantial Evidence Supports the District Court's Findings**

**{16}** We now turn to whether there was substantial evidence to support the district court's findings. Mother argues that "the findings that the district court did make are not supported by any, let alone substantial, evidence, do not support any conclusion(s) of law, had any been made (which were not), [or] that [the determination was] in the best interests of [Child.]" Notwithstanding this sweeping statement, Mother appears to only attack two of the district court's findings with specificity. She refutes that: (1) her testimony was less credible than Father's and was consistent with, rather than explanatory of, the admitted exhibits; and (2) she demonstrated "suicidal ideation" and a "willingness to abandon her other children." For the ensuing reasons, we disagree.

**{17}** We will uphold a district court's custody findings if they are supported by substantial evidence. *See Grant*, 2005-NMCA-058, ¶ 13. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Hough,* 2017-NMCA-050, ¶ 18 (internal quotation marks and citation omitted). "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *N.M. Taxation & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 (internal quotation marks and citation omitted). "This Court will not reweigh evidence on appeal or substitute our judgment for that of the district court." *Hough*, 2017-NMCA-050, ¶ 41. "[T]he appellate court will not reweigh the findings of the [district] court involving disputed testimony or inferences to be drawn therefrom, nor the [district] court's determination as to the credibility of the witnesses." *Jeantete v. Jeantete*, 1990-NMCA-138, ¶ 8, 111 N.M. 417, 806 P.2d 66. "When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *Grant*, 2005-NMCA-058, ¶ 13 (internal quotation marks and citation omitted).

**{18}** Mother first attacks the district court's finding that "[i]n comparing the parties' testimony and the exhibits, the [c]ourt finds that [Mother] does not come across as credible and that [Mother]'s testimony contradicted the admitted [e]xhibits." In a single sentence, Mother contends that her testimony explained the texts and emails admitted into evidence as Exhibits 3-8. This Court cannot reweigh the evidence or substitute our judgment for that of the district court regarding credibility. *Hough*, 2017-NMCA-050, ¶ 41; *Jeantete*, 1990-NMCA-138, ¶ 8 (stating that "the appellate court will not reweigh the findings of the [district] court involving disputed testimony or inferences to be drawn therefrom, nor the [district] court's determination as to the credibility of the witnesses"). In any event, the district court's findings are supported by the testimony and exhibits that were introduced at the hearing. We explain.

**{19}**     Exhibit 3 is a string of text messages between Mother and Father sent on June 7, 2018, during a family trip to Minnesota. Both parties acknowledge that these messages are incomplete and Mother and Father gave conflicting explanations for the missing messages. Mother testified that the messages were lost during a data transfer when Father changed phones. On the other hand, Father testified that Mother had access to his phone and deleted some of the messages. Nevertheless, Father was able to recover some of the text messages by accessing a backed-up copy on his work laptop. In those messages, Mother states she is a failure, abusive to Father, a horrible mother, and that Father would raise the children better. She tells Father to pick up the children stating that they are "waiting in SUV for [him]," she is leaving, and "its best [she goes] alone/[i]t's time to be with the Lord." Father's testimony that he found Mother's five children, aged seven to fifteen, alone in the vehicle and Mother was unable to be located for at least two hours, corroborated the information in the text messages. Father was unsure how long children had been left in the vehicle. Significantly, Mother did not deny sending the text messages or that she left the children alone in the vehicle. Mother's only explanation for these messages and her conduct was that she was angry with Father and said them in a sarcastic manner. Based on the testimony at the hearing as well as the text messages that were introduced,[4] we conclude that substantial evidence supported the district court's determination that Petitioner is "more level-headed and better able to develop [C]hild's social and emotional needs" and "[Father] is more emotionally stable than [Mother]," as well as the court's concern "with [Mother]'s volatility and emotional anxiety."

**{20}**     Mother's second challenge is to the district court's finding that Mother demonstrated "suicidal ideation" and a "willingness to abandon her other children." The district court credited Father's testimony regarding the incident and found Mother's testimony explaining the incident to be not credible. Moreover, Mother's string of text messages which said, among other things, "Goodbye Justin," "Kids are waiting in SUV for you," "I'm putting a movie for them," "I'm leaving," repeatedly asking Father to "please come get them," and stating that "[i]t's time to be with the Lord," after which she turned off her phone, could well lead the district court to find that Mother had suicidal ideation and had left her young children "unattended in a car for an indefinite period of time." In light of the foregoing, there was substantial evidence to support the district court's findings. *See Hough*, 2017-NMCA-050, ¶ 41 ("This Court will not reweigh evidence on appeal or substitute our judgment for that of the district court."); *Grant*, 2005-NMCA-058, ¶ 13 ("When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." (internal quotation marks and citation omitted)).

**{21}**     To the extent that Mother broadly argues the district court's findings "are not supported by any, let alone substantial, evidence," she has failed to meet her burden on appeal. We reiterate that "an appellant is bound by the findings of fact made below unless the appellant properly attacks the findings, and that the appellant remains bound

---

4Mother does not appeal the admission of the text messages, rather she challenges the district court's finding rejecting her explanation as to the missing messages. We do not reweigh the evidence. *See Jeantete*, 1990-NMCA-138, ¶ 8.

if he or she fails to properly set forth all the evidence bearing upon the findings." *Martinez v. Sw. Landfills, Inc.*, 1993-NMCA-020, ¶ 18, 115 N.M. 181, 848 P.2d 1108. "We will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104. Because Mother does not specifically challenge the district court's findings except to say that they are not sufficient, we do not address this argument further.

{22}　Finally, to the extent that Mother claims that the district court may only award primary physical custody to one parent where the district court makes a finding of physical abuse or neglect, we disagree. Mother provides no authority to support this argument. Where a party cites no authority to support a proposition, we assume no such authority exists and need not consider such a proposition. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Additionally, Section 40-4-9(A) and 40-4-9.1(B) require a district court to determine the best interests of the child but nothing in the statute requires the court to find abuse or neglect to support its ruling. Rather, the district court is only required to consider all stated relevant factors and implement a custody arrangement that best supports the child's mental, physical, and developmental well-being. The district court here acknowledged the difficulty of the situation and specifically stated that the decision was "a balancing act . . . on one hand [Mother] has the experience of being a mom in the past where [Father] has no experience." However, ultimately, the district court did not find Mother credible, and found that nothing in her "testimony contradict[ed] the exhibits." The district court further explained that "on the record [this] will seem like a radical decision, but I think a trial court is in the best situation to evaluate a witness's credibility." The district court then provided the parties with a detailed discussion of the evidence and the reasons for its ruling. Contrary to Mother's argument, the district court's findings were based on consideration of all the testimony and exhibits presented, and an application of those findings to the best interest factors. Accordingly, the district court did not abuse its discretion in awarding primary physical custody to Father.

**Conclusion**

{23}　we affirm.

{24}　**IT IS SO ORDERED.**

**LINDA M. VANZI, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**MEGAN P. DUFFY, Judge**