This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41644

**IN THE MATTER OF THE ESTATE OF HELEN CHAVEZ, Deceased, DELBERT CHAVEZ and DAMEN CHAVEZ,**

Plaintiffs-Appellants,

v.

**GINGER M. HUNTER,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF SANDOVAL COUNTY**
**Allison P. Martinez, District Court Judge**

Gary Lasky
Albuquerque, NM

for Appellants

Moses, Farmer, Glenn, Gutierrez, & Werntz, P.C.
Jared A. Armijo
Albuquerque, NM

for Appellee

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Plaintiffs Delbert and Damen Chavez appeal the district court's order and judgment denying Plaintiffs' claims challenging the will of the deceased, Helen Chavez, particularly its determination that Helen's will was not the product of undue influence. Unpersuaded by Plaintiffs' docketing statement, we issued a notice proposing to summarily affirm. In response, Plaintiffs filed a memorandum in opposition, and

Defendant Ginger M. Hunter, Helen's granddaughter, filed a memorandum in support, both of which we have duly considered. Remaining unpersuaded, we affirm.

{2}    In the memorandum in opposition, Plaintiffs continue to assert that the district court erred in concluding that Helen's will was not created as a result of undue influence. [MIO 9, 12; DS 21] Plaintiffs effectively ask that this Court reweigh the evidence presented to the district court, insisting that substantial evidence supports their claim of undue influence. [MIO 12] Though we review the district court's determination on this issue for substantial evidence, *Chapman v. Varela*, 2009-NMSC-041, ¶ 18, 146 N.M. 680, 213 P.3d 1109, our inquiry on appeal is whether substantial evidence supports the result reached, not a different result. *See N.M. Tax'n & Revenue Dep't v. Casias Trucking*, 2014-NMCA-099, ¶ 20, 336 P.3d 436 ("The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." (internal quotation marks and citation omitted)). "We will not reweigh the evidence nor substitute our judgment for that of the fact[-]finder." *Id.* (alteration, internal quotation marks, and citation omitted).

## Undue Influence

{3}    As stated in our proposed disposition, "[a]t trial, proof of undue influence must be established by clear and convincing evidence." *Ridlington v. Contreras*, 2022-NMSC-002, ¶ 15, 501 P.3d 444; *see also Chapman*, 2009-NMSC-041, ¶ 5, ("Clear and convincing evidence is evidence that would instantly tilt the scales in the affirmative when weighed against the evidence in opposition." (alteration, internal quotation marks, and citation omitted)). "The contestant[s] of a will (in this case, [Plaintiffs]) bears the burden of persuading the finder of fact that undue influence occurred." *Chapman*, 2009-NMSC-041, ¶ 6; *see also* NMSA 1978, § 45-3-407 (1975) ("Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation."). Generally, proof of a confidential or fiduciary relationship with the deceased, together with a suspicious circumstance, is sufficient to raise a presumption of undue influence. *Chapman*, 2009-NMSC-041, ¶ 9. Suspicious circumstances include:

> (1) old age and weakened physical or mental condition of [the deceased];
> (2) lack of consideration for the bequest; (3) unnatural or unjust disposition
> of the property; (4) participation of beneficiary in procuring the gift; (5)
> domination or control over the donor by a beneficiary; and (6) secrecy,
> concealment, or failure to disclose the gift by a beneficiary.

*Id.* ¶ 7. However, "[t]his is not an exhaustive list, nor is it a list of circumstances that are always suspicious. Furthermore, the presence of any of these circumstances is not in itself dispositive." *Id.* (internal quotation marks and citation omitted). "The ultimate question before the trier of fact is whether the will contestant has proven that the testator made a gift [they] would not have made absent improper influence." *Id.* ¶¶ 14, 16 (stating that the fact-finder must determine whether undue influence has been proven by clear and convincing evidence, and that in reaching that decision, the fact-

finder may credit or ignore the presumption (internal quotation marks and citation omitted)).

**{4}** As discussed at length in our proposed disposition, there are facts in the record sufficient to conclude Defendant had a fiduciary relationship with Helen. *See Ridlington*, 2022-NMSC-002, ¶ 16 (defining a confidential or fiduciary relationship as one where "trust and confidence is reposed by one person in the integrity and fidelity of another" (internal quotation marks and citation omitted)). Plaintiffs assert that suspicious circumstances exist in the form of Helen's old age and weakened mental condition as well as an unjust disposition of property. [MIO 13-16]

**Suspicious Circumstances—Old Age and Weakened Physical or Mental Condition**

**{5}** As to Helen's mental condition, Plaintiffs challenge the district court's determination that none of the medical records in evidence indicate Helen was physically or mentally weak in 2015 or 2016. [MIO 13-14; 5 RP 1165] Plaintiffs insist that Helen was elderly, suffering from dementia in 2018, and reliant on others to manage her personal finances. [MIO 14] In support of this assertion, Plaintiffs point to a letter from her primary care physician, penned in 2015, indicating Helen suffered from depression and stating that "her stress and anxiety at times had precluded her good judgment." [MIO 4] We are not persuaded.

**{6}** The letter was prepared during litigation over whether Helen had conveyed certain property to one of her sons, and was used as evidence of Helen's mental state as of 2003. [DS 11; 4 RP 1005; 3 RP 577] Nothing in the letter, however, demonstrates Helen suffered from poor judgment as a result of her stress and anxiety at the time she executed her will, or even at the time the letter was written. [MIS 4-5] *See McElhinney v. Kelly*, 1960-NMSC-112, ¶ 22, 67 N.M. 399, 356 P.2d 113 ("Undue influence, in order to make a will void, must be directly connected with its execution and must operate at the time it was made."); *cf. In re Estate of Head*, 1980-NMCA-096, ¶ 16, 94 N.M. 656, 615 P.2d 271 ("To invalidate a trust instrument, mental incompetency must be operative at the time of the execution of the instrument."). In fact, Plaintiffs acknowledge in their memorandum in opposition that "the mental health of [Helen] is ambiguous" for the years when she executed her wills. [MIO 13-14]

**{7}** Moreover, multiple witnesses testified to Helen's behavior and actions around the time Helen executed her will, indicating she made her desires known to others, lived independently, managed her own affairs, and traveled as she wished. [CN 4-5; MIS 5] Her attorneys testified that they did not believe Helen was being controlled or that she was not acting according to her own free will. [CN 5] In addition, expert testimony on the issue of Helen's mental condition was couched in supposition—Plaintiffs' expert opined that Helen may have had some age-related mental decline in 2018 that could have potentially affected her mental state. [DS 54, 57; CN 4] Even assuming Plaintiffs' assertions regarding Helen's mental capacity are supported by facts in the record, such facts must be disregarded. *See Chapman*, 2009-NMSC-041, ¶ 5 ("We consider the evidence in the light most favorable to the prevailing party and disregard any inferences

and evidence to the contrary."). Accordingly, Plaintiffs have failed to prove by clear and convincing evidence that Helen's age and mental condition created a suspicious circumstance indicative of undue influence. *See Ridlington*, 2022-NMSC-002, ¶ 15; *Chapman*, 2009-NMSC-041, ¶ 5.

**Suspicious Circumstances—Unjust Disposition**

{8}     Plaintiffs also assert the district court erred in failing to find undue influence because there had been an unjust disposition of property. [MIO 14-16] Specifically, Plaintiffs challenge the district court's finding that Helen felt she made an equitable distribution of her property through a combination of deed conveyances and her will. [MIO 15] Plaintiffs assert that Delbert Chavez received less than four percent of the value of all properties conveyed in 2017 while Defendant received ninety six percent of the value of the properties conveyed in 2015. [MIO 15-16] Plaintiffs also assert that Plaintiff Damen Chavez received a social security retirement check that was not susceptible to change based on gifts or inheritances, so the failure to leave anything to Damen was not equitable.[1] [MIO 16] We disagree.

{9}     Plaintiffs have not stated when, or if, facts relevant to the value of various properties or Damen's social security were presented to the district court. *See* Rule 12-321 NMRA (providing that in order to preserve an issue for appellate review, "it must appear that a ruling or decision by the trial court was fairly invoked"). Even assuming such facts were properly presented and preserved in the district court, Plaintiffs have not identified any authority requiring that a will make an *equal* disposition of property. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Moreover, such a requirement under the facts of this case would run afoul of the principle of testamentary freedom. *See In re Estate of Gersbach*, 1998-NMSC-013, ¶ 30, 125 N.M. 269, 960 P.2d 811 (stating that it is improper for appellate courts to find undue influence based on speculation because doing so would jeopardize the testator's testamentary freedom).

{10}    Plaintiffs also assert the district court should have found undue influence because Helen's will is contrary to her previously expressed intentions. [MIO 11] In making this assertion, Plaintiffs rely on declarations created during litigation over whether Helen had conveyed certain property to one of her sons. Plaintiffs assert that statements made in the declarations, in which Helen claimed that she "had no intent to convey away [her] property" when she signed certain deeds in 2003 and that her "intention with regard to [her] property is that [her] children, including [Defendant] and [Defendant's brother] share equally," were "not adequately considered." [MIO 4, 11; 3

---

[1]Plaintiffs assert in the memorandum in opposition that Damen "did not receive [s]ocial [s]ecurity [d]isability . . . [b]enefits," stating instead that he received "[s]ocial [s]ecurity *retirement benefits*" that "are *not* means-tested and are not threatened by an inheritance." [MIO 15] We note, however, that these assertions are somewhat inconsistent with Plaintiffs' representations in written filings that Plaintiff Damen is "a disabled individual receiving [s]ocial [s]ecurity disability benefits" [4 RP 1194], and that he never owned other properties "[d]ue to his having a developmental disability" [DS 12].

RP 576-77] Though Plaintiffs assert one declaration was prepared in 2015 and one in 2016, Plaintiffs have not identified where in the record the declarations can be found or identified any evidence in the record to show when the declarations were created. *See Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104 ("We will not search the record for facts, arguments, and rulings in order to support generalized arguments."); *see also Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)).

**{11}** As discussed in our proposed disposition, Helen's will indicates she intentionally omitted heirs in favor of leaving the entirety of her estate to Defendant. [5 RP 1165] There was also testimony indicating Helen did not keep her testamentary wishes—including leaving nothing to Plaintiffs—secret, but instead expressed her intent to her friends and attorney. [5 RP 1166] Again, viewing the evidence in the light most favorable to Defendant and disregarding any evidence and inferences to the contrary, we conclude that there was substantial evidence to support the district court's determination that Helen's will was in accordance with her own expressed intentions. *See Casias Trucking*, 2014-NMCA-099, ¶ 20.

**{12}** Plaintiffs also challenge the district court's statements regarding property ownership, asserting the district court was wrong to credit Defendant's testimony rather than the records proffered by Plaintiffs. [MIO 14] We begin by noting once more that Plaintiffs' assertion fails to recognize that it is not this Court's role to reweigh the evidence. *See id.* As we stated in our proposed disposition, the district court found, based on the evidence and testimony before it, that Helen executed various deeds in front of a notary and traveled as necessary to record the deeds herself. [CN 3; 5 RP 1163] Helen felt that the division of property was equitable, given the conveyances she made while alive [Id.], and confirmed with her attorney that she wanted to leave Plaintiffs out of receiving anything under the will [CN 4; 5 RP 1164]. Even assuming Plaintiffs' assertions regarding which properties were conveyed to Plaintiff Delbert and the value of each property are supported by facts in the record, we do not consider those facts in assessing whether the district court erred. *See Chapman*, 2009-NMSC-041, ¶ 5.

**Substantial Evidence**

**{13}** Plaintiffs also assert that the proposed disposition overlooks evidence and inferences favorable to their case on appeal. [MIO 9] They claim that conflicting testimony in the record raises genuine issues of material fact that should not be resolved in a summary disposition. According to Plaintiffs, "[w]hen material facts are disputed, or where more than one inference can be drawn from the facts in the record proper, the matter should be placed on the general calendar." [MIO 8-9] Plaintiffs have not, however, cited any authority to support their assertion. *See Curry*, 2014-NMCA-031, ¶ 28. Plaintiffs also point to evidence involving Defendant's character, apparently asserting the district court should not have found Defendant to be credible. [MIO 12;

MIS 8] Such assertions present no issue for review, as it is not the role of this Court to determine credibility. *See Skeen v. Boyles*, 2009-NMCA-080, ¶ 37, 146 N.M. 627, 213 P.3d 531 (stating that, when the district court hears conflicting evidence, "we defer to its determinations of ultimate fact, given that we lack opportunity to observe demeanor, and we cannot weigh the credibility of live witnesses").

**{14}** Accordingly, despite Plaintiffs' assertions to the contrary, we conclude that substantial evidence supports the district court's conclusion that Helen executed her will without undue influence. *See Chapman*, 2009-NMSC-041, ¶ 14 ("The ultimate question before the trier of fact is whether the will contestant has proven that the testator made a gift [they] would not have made absent improper influence." (internal quotation marks and citation omitted)). Accordingly, Plaintiffs have failed to demonstrate reversible error. *See Hennessy v. Duryea*, 1998-NMCA-036, ¶ 24, 124 N.M. 754, 955 P.2d 683 ("Our courts have repeatedly held that, in summary calendar cases, the burden is on the party opposing the proposed disposition to clearly point out errors in fact or law.").

**{15}** For the reasons stated in our notice of proposed disposition and herein, we affirm.

**{16}   IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**ZACHARY A. IVES, Judge**

**SHAMMARA H. HENDERSON, Judge**